**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

JUAN RANGEL,
              *Defendant-Appellant.*

No. 11-50062

D.C. No.
2:10-cr-01061-
SJO-1

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
SUGGESTION
FOR REHEARING
EN BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
March 8, 2012—Pasadena, California

Filed July 20, 2012
Amended October 15, 2012

Before: Jerome Farris, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

12265

## COUNSEL

Anthony E. Colombo, Jr., San Diego, California, for the plaintiff-appellee.

James A. Bowman, Assistant United States Attorney, Los Angeles, California, for the defendant-appellant.

## ORDER

The opinion filed July 20, 2012 is **AMENDED** as follows:

1. At page 8360 of the slip opinion, the following sentence is deleted:

> We conclude that the court did not abuse its discretion in considering the serious financial impact Rangel's crimes had on his victims, including the fact that they were unlikely to ever receive any compensatory payments from Rangel.

and replaced with:

> We conclude that the court did not abuse its discretion in considering the serious financial impact Rangel's crimes had on his victims.

2. At page 8362 of the slip opinion, the following sentence is deleted:

> Because Rangel was not expected to make restitution payments, the impact on the victims stood unmitigated.

3. At page 8362 of the slip opinion, the following sentence is deleted:

> Consideration of the unmitigated impact on the victims was appropriate.

and replaced with:

> Consideration of the impact on the victims was appropriate.

With this amendment, the panel has voted to deny the petition for rehearing. Judge Clifton and Judge Ikuta voted to

deny the petition for rehearing en banc and Judge Farris so recommends.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and suggestion for rehearing en banc, filed August 16, 2012, are DENIED. No further petition for rehearing and/or suggestion for rehearing en banc may be filed.

---

## OPINION

CLIFTON, Circuit Judge:

Defendant Juan Rangel pled guilty to mail fraud and money laundering. Based on the sentencing factors set out in 18 U.S.C. § 3553(a), the district court imposed a prison sentence longer than the one proposed by the parties in the plea agreement and also in excess of the range recommended by the advisory Sentencing Guidelines. Rangel appeals his sentence, claiming both procedural error and substantive unreasonableness. Though it imposed a sentence outside of the Guidelines range, the district court did not err by failing to provide prior notice under Rule 32(h) of the Federal Rules of Criminal Procedure, as this notice is not required when varying a sentence based on § 3553(a) factors. Further, the district court did not impermissibly rely on Rangel's inability to pay restitution by considering the financial impact his crimes had on his victims. The other challenges to Rangel's sentence also lack merit. We affirm.

## I.  Background

Rangel was indicted on multiple counts of mail fraud relating to his ownership and operation of Financial Plus Invest-

ments, a company purporting to offer investment services. Through Financial Plus, Rangel engaged in a Ponzi-type scheme whereby investors were offered a guaranteed rate of return supposedly backed by profits earned through the purchase and sale of real estate and through high interest loans to homeowners facing foreclosure. In reality, only a small fraction of the investors' money was directed toward real estate investments. Financial Plus instead paid investors through funds deposited with the company by other investors. In addition, Rangel also engaged in a mortgage fraud scheme targeting Latino homeowners facing potential foreclosure. Through straw buyer purchases and fraudulent mortgage loan applications, Rangel directed loan proceeds into bank accounts that he controlled, causing significant losses to both the home owners and the lenders.

Rangel pled guilty to one count of mail fraud and one count of money laundering related to the mortgage fraud pursuant to a written plea agreement. The parties agreed to a Guidelines calculation that resulted in an offense level of 36 and further agreed that a sentence of 180 months in custody, which was below the lower end of the Guidelines range, would be "a reasonable and appropriate sentence." They both filed sentencing memoranda in support of such a sentence. The plea agreement, however, acknowledged that the district court had the discretion to decide upon the sentence, up to the statutory maximum of 30 years of imprisonment; that the Sentencing Guidelines were advisory; and that Rangel could not count on receiving a sentence within the Guidelines.

During the sentencing hearing, the district court noted the reasons offered by Rangel for the proposed 180-month sentence, including his insignificant criminal history, the impact of a lengthy sentence on his family, the collateral immigration consequences, his ineligibility for certain prison benefits based on his non-citizen status, and his restrictive pretrial confinement conditions. The district court inquired into Rangel's ability to pay restitution to his victims. The plea agreement

had noted Rangel's liability for restitution to his victims, which was said to total approximately $20 million. At the sentencing hearing, the court was informed that Rangel was not in a position to pay any restitution toward the victims' losses.

In calculating the advisory guidelines range, the court found a total offense level of 36, matching the calculation in the written plea agreement, and a criminal history category of I. The advisory guideline range for an adjusted offense level of 36, with a criminal history category I, was 188 to 235 months.

Following this determination, the court considered the factors under 18 U.S.C. § 3553(a).[1] The court heard from the vic-

---

[1]Title 18 U.S.C. § 3553(a) requires that a sentencing court consider the following factors:

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed —

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3) the kinds of sentences available;

   (4) the kinds of sentence and the sentencing range established for —

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . hh

   (5) any pertinent policy statement . . .

   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   7) the need to provide restitution to any victims of the offense.

tims of Rangel's scheme and from Rangel himself. The victims described the serious and lasting impact of Rangel's crimes, including the loss of their homes, college funds and retirement savings, and substantial emotional turmoil.

The district court sentenced Rangel to consecutive terms of 240 months for mail fraud and 24 months for money laundering, totaling 264 months in custody, plus five years of supervised release on the mail fraud count (and a concurrent term of three years supervised release on the money laundering count), and a $200 special assessment. Following a subsequent hearing, the court determined that the amount of restitution owed by Rangel was $19,922,656.

At the end of the sentencing hearing, Rangel made timely objections to the court's consideration of his inability to pay restitution in determining his sentence, and to the imposition of consecutive, rather than concurrent, sentences for the two counts. The court responded by stating that it understood that there was no evidence establishing that Rangel had available funds to pay restitution to the victims, and that it did not take his inability to pay restitution into consideration when sentencing. The court said that it imposed the sentence because the Guidelines range "[did] not reflect the seriousness of the conduct, the sophistication of the Defendant, the callousness of the Defendant and all of the harm and trauma that has befallen the [victims of the crimes]."

## II.  Discussion

A district court's sentencing decisions are generally reviewed for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Only a procedurally erroneous or substantively unreasonable sentence should be set aside. *See Gall*, 552 U.S. at 46; *Rita v. United States*, 551 U.S. 338, 351 (2007); *Carty*, 520 F.3d at 993. Procedural error includes failing to calculate or calculating incorrectly the proper

Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, choosing a sentence based on clearly erroneous facts, or failing to explain a selected sentence sufficiently to permit appellate review, including any deviation from the Guidelines range. *See Carty*, 520 F.3d at 993. Where a procedural sentencing error is raised for the first time on appeal, it is reviewed for plain error. *United States v. Burgum*, 633 F.3d 810, 812 (9th Cir. 2011) (citing *United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010), *cert. denied,* ___ U.S. ___, 131 S.Ct. 956 (2011)).

## A.   Rule 32(h) Notice

**[1]** The Sentencing Guidelines provide that a court may impose a sentence outside the Guidelines range through either a "departure" or a "variance." We have described the difference between the two:

> A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a).

*United States v. Cruz-Perez*, 567 F.3d 1142, 1146 (9th Cir. 2009) (internal citations omitted).

**[2]** Federal Rule of Criminal Procedure 32(h) requires a district court to provide notice of a potential "departure" from

the Sentencing Guidelines range.[2] *See United States v. Evans-Martinez*, 530 F.3d 1164, 1167-68 (9th Cir. 2008) (holding that Rule 32(h) survives *United States v. Booker*, 543 U.S. 220 (2005)). This notice requirement does not apply, however, to a "variance" under § 3553(a). *Irizarry v. United States*, 553 U.S. 708, 714 (2008).

Promulgated in response to *Burns v. United States*, 501 U.S. 129 (1991), Rule 32(h) was designed to ensure "full adversary testing of the issues relevant to a Guidelines sentence." *Burns*, 501 U.S. at 135. *Irizarry* explained that Rule 32(h) was premised on protecting a defendant's expectation that his sentence would be within the applicable Guidelines range. *Irizarry*, 553 U.S. at 713. *Booker* eliminated this expectation by making the Guidelines advisory only. *Id.* at 713-14. The Court further observed that Rule 32(h) had never applied to § 3553(a) variances, even prior to *Booker*. *Id.* at 714.

Rangel argues that the district court procedurally erred by imposing a sentence outside the Sentencing Guidelines range without providing notice of its intent to do so.[3] Because his sentence was greater than the Guidelines range, Rangel argues

---

[2]Federal Rule of Criminal Procedure 32(h) provides:

> (h) Notice of Possible Departure from Sentencing Guidelines. Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

[3]Rangel also argues that the district court committed a procedural error in imposing consecutive sentences beyond the "total punishment," as determined by U.S.S.G. § 5G1.2(c). Rangel is correct that if the district court had relied on this section of the Sentencing Guidelines to impose the consecutive sentences, it would have constituted procedural error. However, as explained below, at 8359-60, the district court did not rely on this section, nor was it required to do so.

that it was a departure, and thus subject to the Rule 32(h) notice rule. In support, he cites two pre-*Booker* Ninth Circuit cases that held that the imposition of consecutive sentences required notice, but his reliance on those cases is unpersuasive, most obviously because neither of those decisions involved a sentencing "variance" under § 3553(a).

**[3]** In *United States v. Brady*, 928 F.2d 844 (9th Cir. 1991), *abrogated in part on other grounds by Nichols v. United States*, 511 U.S. 738 (1994), we held that the district court erred by imposing a sentence of consecutive terms when U.S.S.G. § 5G1.2 pointed toward concurrent terms. *Id.* at 849-50.[4] We also held that the district court should have given notice before imposing the concurrent sentence. *Id.* at 847. In *United States v. Williams*, 291 F.3d 1180 (9th Cir. 2002), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940, 942 (9th Cir. 2007) (en banc), we recognized that the rationales that the district court had provided for the consecutive sentences could be acceptable grounds for "departure" under the Sentencing Guidelines, but remanded because notice of a possible departure had not been given. *Id.* at 1193. Neither *Brady* nor *Williams* held that notice was required when a court imposes consecutive sentences in variance from the Guidelines, however. Nor did those cases hold that the imposition of consecutive sentences for multiple counts necessarily entails a departure, rather than a variance, under the Guidelines.[5] In any event, both *Brady* and *Williams* must be

---

[4]Our decision to require such notice in *Brady*, however, was not based on *Burns* or Rule 32(h). *Brady* predated both the Supreme Court's decision in *Burns* and the subsequent incorporation of that decision into Rule 32(h).

[5]When we referred to the sentence in *Brady* as a "drastic departure from the Guidelines," *id.* at 850, we did not use the word "departure" in the technical sense of a "change from the final sentencing range computed by examining the provisions of the Guidelines themselves." *Cruz-Perez*, 567 F.3d at 1146. We held that the consecutive sentences were inappropriate under the Guidelines, so they were in fact neither a departure nor a variance.

read today in light of the Court's decisions in *Booker* and *Irizarry*, which altered the sentencing landscape. Whatever the earlier cases said about consecutive sentences imposed as a "departure" under the then-binding Guidelines, they do not require notice under Rule 32(h) when consecutive sentences are imposed pursuant to a "variance" under § 3553(a).

In *Evans-Martinez*, we held that the Rule 32(h) notice requirement survived *Booker*. *Id.* at 1167-68. *Evans-Martinez*, however, did not extend the Rule 32(h) notice requirement to variances under § 3553(a). In fact, we explicitly held that our decision applied only to departures:

> *Irizarry* does not control the result in this case because the district court here did not sentence at variance from the recommended Guidelines range based on Section 3553(a) factors, but departed as the term was used when Rule 32(h) was promulgated.

530 F.3d at 1169.[6]

**[4]** A district court has the discretion to determine whether to impose multiple sentences concurrently or consecutively under 18 U.S.C. § 3584(a). In making this determination, the court "shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section

---

[6]Rangel also cites to *United States v. Hahn*, 557 F.3d 1099 (9th Cir. 2009) for support. This case is unhelpful as the district court was explicit that its imposition of a federal sentence to run consecutive to a state sentence was a departure from U.S.S.G. § 5G1.3(b), and thus required notice under Rule 32(h). *Id.* at 1101. Further, the parties in *Hahn* did not dispute that § 5G1.3(b) applied, that the imposition of consecutive sentences where § 5G1.3(b) applies was a departure, and that notice was required. *Id.* at 1102. Our decision in *United States v. Folaumahina*, 293 F. App'x 523 (9th Cir. 2008) (unpublished), similarly provides no support for Rangel's argument as "[t]he district court clearly characterized its sentence as an upward departure from the Guideline range," despite the fact that it had provided no notice pursuant to Rule 32(h). *Id.* at 524.

3553(a)." 18 U.S.C. § 3584(b). That is precisely what the district court did in this case. The court was explicit in relying on § 3553(a) factors in imposing a higher sentence, with consecutive terms, on Rangel. The district court made no mention of any departure within the Sentencing Guidelines in setting the two terms to run concurrently. Because the district court explicitly relied on § 3553(a) variance factors in determining to run the two sentences consecutively, no notice was required under Rule 32(h), which applies only to departures.[7]

## B.   Inability to Pay Restitution

Rangel argues that the district court erred in considering his inability to pay restitution to his victims in determining his sentence. We conclude that the court did not abuse its discretion in considering the serious financial impact Rangel's crimes had on his victims.

[5] A court may not impose a longer prison term as a substitute for a monetary penalty or as punishment for poverty and indigence. *See Williams v. Illinois*, 399 U.S. 235, 240-42 (1970) (holding that an individual may not be held in continued confinement beyond the statutory maximum because of his failure to pay a fine); *Tate v. Short*, 401 U.S. 395, 398-99 (1971) (holding unconstitutional the imposition of a jail sentence for a "fines only" offense where the defendant was unable to pay a fine); *Bearden v. Georgia*, 461 U.S. 660, 661-62 (1983) (holding that a sentencing court could not revoke probation for failure to pay a fine and make restitution absent findings that the defendant had not made sufficient bona fide

---

[7]Rangel and the government disagree as to the appropriate standard of review regarding his challenge to the failure to give notice under Rule 32(h). Rangel argues that he objected to the imposition of consecutive sentences and so the appropriate standard is abuse of discretion. In contrast, the government maintains that because Rangel did not specifically object to the lack of notice, the standard of review is plain error. We need not settle this dispute because even if we accept Rangel's standard, the district court did not abuse its discretion by failing to give notice.

efforts to pay or that alternative forms of punishment would be inadequate).

**[6]** A sentencing court is empowered to consider whether the victims will receive restitution from the defendant in varying from the Sentencing Guidelines based on § 3553(a) factors, however. Following *Booker*, we held that district courts, employing factors listed under § 3553(a), "have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed not ordinarily relevant, such as age, education and vocational skills, mental and emotional conditions, employment record and family ties and responsibilities." *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (en banc) (quoting *United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) (en banc) (Wardlaw, J., concurring in part and dissenting in part) (internal quotation marks omitted and emphasis removed)), *overruled on other grounds as recognized by United States v. Munoz-Camarena*, 621 F.3d 967, 969 (9th Cir. 2010). Further, we observed that "the district court's goal of obtaining restitution for the victims of Defendant's offense, 18 U.S.C. § 3553(a)(7), is better served by a non-incarcerated and employed defendant." *Id.*

Rangel primarily relies on *United States v. Burgum*, 633 F.3d 810 (9th Cir. 2011), to support his position that a court may not consider restitution at all in imposing a longer sentence than that recommended by the Guidelines. In *Burgum*, the district court at sentencing noted that the defendant was unlikely to be able to pay the ordered restitution, and considered this "one additional aggravating factor." *Id.* at 814. We vacated the sentence and remanded after concluding that the district court "plainly err[ed] by treating Burgum's inability to pay restitution as an aggravating sentencing factor." *Id.* But *Burgum* did not hold that there is an absolute bar to considering the possibility of restitution. Our concern in that case was that treating defendants who could not pay restitution as more culpable than those who could would result in discrimination

against poor and indigent defendants. *Id.* at 816 ("[W]e have made clear that class and wealth distinctions . . . have no place in criminal sentencing." (alteration in original) (internal quotation marks omitted)).

[7] The district court in this case did not consider Rangel's inability to pay restitution itself as an aggravating factor in imposing a longer sentence, but focused instead on the impact on the victims of Rangel's crimes. During the sentencing hearing, the district court noted that "one of the factors for the Court to consider under 3553 is restitution to the victims." Continuing in this vein, the court repeatedly referred to the financial ruin that Rangel caused his victims, and the length of time it would take them to recover their losses. The court's discussion made clear that its concern over restitution was based on the impact Rangel's crime had on the victims and was not designed to punish Rangel for his inability to pay. At the end of the sentencing hearing, the court responded to Rangel's objection by reiterating that the sentence was based not on Rangel's inability to pay restitution but on "all of the harm and trauma that has befallen the [victims of the crimes]." Consideration of the impact on the victims was appropriate.

## C. Other Sentencing Issues

Rangel raises a number of other challenges to his sentence, none of which are persuasive.

[8] First, Rangel argues that the district court judge should have recused himself due to bias and prejudice. Where recusal was not requested in the district court, as is the case here, judicial bias claims are reviewed for plain error. *See United States v. Bosch*, 951 F.2d 1546, 1548 (9th Cir. 1991). A "judge's conduct during the proceedings should not, except in the 'rarest of circumstances' form the sole basis for recusal." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). At the sentencing hearing, the district court judge voiced sym-

pathy for the victims, noting his own family's immigrant history and connection with the neighborhood targeted by Rangel's fraud. Rangel argues that this statement made clear that the judge had "a strong emotional connection to the case," and so his impartiality might reasonably be questioned. This argument has no merit. The district court judge made this statement after hearing numerous victims recount the financial and emotional hardship they faced as a result of Rangel's crimes. Expressing sympathy for the victims' plight, with general references to the "American dream," in no way implies that the district court judge could not and did not impartially impose a sentence.

Second, Rangel argues that the government breached the plea agreement by providing photographs of his home during the sentencing. Where a defendant fails to raise an alleged breach of a plea agreement in the district court, such a claim is waived on appeal. *United States v. Flores-Payon*, 942 F.2d 556, 560 (9th Cir. 1991).[8] An appellate court is generally ill-equipped to review such a claim in the first instance.

Third, Rangel argues that the district court committed a procedural error in failing to adequately address all of the arguments he offered to the court for reducing his sentence based on § 3553(a) factors. As Rangel did not object to his sentence on this ground prior to this appeal, the standard of review is for plain error. *See United States v. Valencia-*

---

[8]An appellate court may review issues not raised before the district court only under narrow exceptions:

> (1) there are 'exceptional circumstances' why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.

*Flores-Payon*, 942 F.2d at 558 (quoting *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990)). None of these exceptions apply here.

*Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010). Following *Booker*, a sentencing court must consider the sentences suggested by the parties after determining the applicable Guidelines range. *Carty*, 520 F.3d at 991. In doing so, the court should decide if the § 3553(a) factors support the suggested sentence:

> [I]t should consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims.

*Id.* "Once the sentence is selected, the district court must explain it sufficiently to permit meaningful appellate review. . . . An explanation communicates that the parties' arguments have been heard, and that a reasoned decision has been made." *Id.* at 992. What constitutes a sufficient explanation necessarily depends on the context of the specific case. *Id.* A "district court need not tick off each of the § 3553(a) factors to show that it has considered them." *Id.* The appellate court can "assume that district judges know the law and understand their obligations to consider all of the § 3553(a) factors, not just the Guidelines." *Id.* But "when a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *Id.* at 992-93. Rangel argues that the court did not consider all of his "specific, nonfrivolous" arguments "tethered to a relevant § 3553(a) factor" in support of his suggested sentence of 180 months. In particular, he argues that the court committed procedural error by not considering the restrictive nature of

his pretrial confinement, the collateral consequences of deportation, the impact his status as a non-citizen would have on his eligibility for various prison programs, and the time and resources he saved the government by quickly resolving his case through a guilty plea. Although Rangel acknowledges that the district court mentioned each of these arguments, he maintains that the court "did not show enough of its work." We disagree.

Rangel relies heavily on *United States v. Bragg*, 582 F.3d 965 (9th Cir. 2009), but this case is distinguishable for several reasons. First, the standard of review in *Bragg* was abuse of discretion, not the more deferential plain error standard of review here. *See id.* at 968. Second, the court noted that the district court had relied heavily on a scant evidentiary record to reduce Bragg's sentence below the Guidelines range. *Id.* at 968-69. The record here was considerably more substantial. Third, the district court in *Bragg* had ignored specific § 3553(a) factors. *See id.* at 969-70. Rangel has not tethered his arguments for a downward variance to any specific factors.

**[9]** As *Rita* and *Carty* have made clear, reversal is not justified where the court reviews and listens to the defendant's arguments, states that it has reviewed the criteria set forth in § 3553(a), and then imposes a sentence, explaining both the sentence and the justification for the decision. *See Rita*, 551 U.S. at 357-58; *Carty*, 520 F.3d at 995-96. Context is important, and it is often unnecessary for the district court to provide a lengthy explanation and directly address each and every one of the defendant's arguments. *See Rita*, 551 U.S. at 358 (noting that the record and context make clear that the judge "considered the evidence and arguments"); *Carty*, 520 F.3d at 995 (holding adequate the district court's statements indicating that it had heard from the defense's witnesses and counsel); *see also United States v. Carter*, 560 F.3d 1107, 1117-18 (9th Cir. 2009) (rejecting the defendant's argument that the sentencing court did not adequately address his "com-

plex" arguments and noting that the district court had no obligation to engage the defendant in questions or further discussion "because it is clear from the context that the defense's arguments were heard"). This is especially true in a case such as this, where our review is for plain error only. *See Valencia-Barragan*, 608 F.3d at 1108. The district court here met its obligations to consider fully Rangel's arguments regarding § 3553(a) factors. No plain error occurred.

**[10]** Fourth, Rangel argues that his sentence was not substantively reasonable. In determining substantive reasonableness, this court is "to consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range. A court of appeals may *not* presume that a non-Guidelines sentence is *un*reasonable." *Carty*, 520 F.3d at 993 (internal citations omitted). The district court is to be given "due deference" that the § 3553(a) factors, as a whole, justify the extent of the variance for a non-Guidelines sentence. *Id.* "We may not reverse just because we think a different sentence is appropriate." *Id.* The district court spent significant time in the sentencing hearing reviewing and discussing § 3553(a) factors before announcing its sentence. As discussed above, the court adequately considered Rangel's § 3553(a) arguments for a lighter sentence. The district court did not abuse its discretion in sentencing Rangel to 264 months in custody.

Finally, Rangel argues that his sentence is procedurally and substantively unreasonable because the court considered an impermissible factor—his inability to speak English. This argument has no merit. Rangel attempts to use a single statement made by the district court judge doubting that Rangel really needed an interpreter. No evidence exists that the district court relied on Rangel's inability to speak English as a factor in determining his sentence. Rather, the court obviously thought that he did speak English, but deferred to his request for a translator anyway.

**AFFIRMED.**