**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4026**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

TODD ALLEN SPENCER, a/k/a Todd Alan Spencer,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:13-cr-00131-RGD-LRL-1)

Argued:  December 8, 2016        Decided:  February 9, 2017

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by published opinion.  Judge Wilkinson wrote the opinion, in which Judge Shedd and Judge Duncan joined.

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Rodolfo Cejas, II, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Dana J. Boente, United States Attorney, Alexandria, Virginia, William D. Muhr, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Todd Allen Spencer pleaded guilty to mailing a threatening letter in violation of 18 U.S.C. § 876(c). The district court deviated upward from the advisory Guidelines range to account for the threat's effect on the victim and imposed a 45-month sentence.

Spencer now contends that his sentence was procedurally and substantively unreasonable. For the reasons that follow, we affirm.

I.

On September 12, 2013, the clerk's office of the federal courthouse in Norfolk, Virginia received a letter from an inmate at Chesapeake City Jail identified as "T.A. Spencer." The letter was covered in white powder and read, in part, as follows:

> You never know when it can happen! The very letter you hold may indeed be the last you hold. This letter may contain on it what takes your last breath. Who knows? Only time will tell. Good luck to you.
>
> . . . .
>
> Should you run? Should you stay? Who do you call to make it all go away? Are you already infected with the pain? What do you do? Is there anything to gain? Only time will tell.

J.A. 14-15. The clerk who opened the letter was "disconcerted and afraid"; at the instruction of the U.S. Marshals she locked herself alone — with the letter — in the mailroom until inspectors arrived. J.A. 15. In the course of the investigation,

2

one inspector visited Spencer at Chesapeake City Jail, where he admitted to sending the letter and explained that the powder was dried toothpaste. He had included the powder "to enhance the effect of the letter in order to put fear into the reader that the white powdery substance was some type of poison." Id.

On October 2, 2014, Spencer pleaded guilty to sending a threatening communication in violation of § 876(c). The probation officer prepared a presentence report ("PSR"), which recommended a base offense level of 12. The probation officer then applied a six-level enhancement because, in his view, the offense involved "conduct evidencing intent to carry out [the] threat" contained in the letter. U.S. Sentencing Guidelines Manual § 2A6.1(b)(1) (U.S. Sentencing Comm'n 2016). After factoring in Spencer's acceptance of responsibility and criminal history category, the PSR yielded an advisory Guidelines range of 37 to 46 months.

At the sentencing hearing on January 13, 2015, the district court overruled Spencer's objection to the six-level enhancement and sentenced him to 46 months' imprisonment. The district court expressed concern about the "devastat[ing]" impact on the victim: "One can't forget it. It's like war. . . . You can't forget what people do when they face the ultimate." J.A. 46, 59. Given the "very, very serious" nature of the offense, the court

3

observed that the Guidelines were "very kind" and therefore imposed a sentence at the top of the advisory range. J.A. 60-61.

On appeal, this court found that the district court erred in applying the six-level enhancement. United States v. Spencer, 628 F. App'x 867 (4th Cir. 2015). The court determined that Spencer's threat did not qualify for the § 2A6.1(b)(1) increase because the use of harmless toothpaste did not suggest an intent to carry out the threat to kill or injure the clerk. Accordingly, the panel vacated and remanded for resentencing without application of the enhancement.

On January 12, 2016, the district court noted at the outset of the resentencing hearing that, in light of the Fourth Circuit's mandate, it would not apply any additional enhancements. But the court explained that a sentence in the range of 21 to 27 months would be "totally inadequate" based on the sentencing factors in 18 U.S.C. § 3553(a). J.A. 118. The district court reiterated its concern about the need to "afford adequate deterrence" to similarly situated offenders. J.A. 127. The court also underscored the importance of providing "just punishment" that reflected the serious nature of the offense: "The lady who got that letter thought it was anthrax, and she thought somebody had sentenced her to death." J.A. 126-27.

Taking these "factors into consideration and the fact that [Spencer] ha[s] successfully appealed the prior sentence," the

4

court decided to "upwardly depart" and imposed a sentence of 45 months. J.A. 128. The district court reasoned that the sentence was "fair under the circumstances" and one that it "would have given him if there had never been any . . . [Guidelines.]" J.A. 133. Although the court maintained that it was "strictly an upward departure," id., on the Statement of Reasons for the judgment it checked the box for a variance sentence and cited the § 3553(a) factors as the basis for deviating from the Guidelines, J.A. 244-45.

## II.

We review a sentence for both procedural and substantive reasonableness. See Gall v. United States, 552 U.S. 38, 51 (2007). We first ensure that the district court committed no significant procedural error, such as "improperly calculating[] the Guidelines range, . . . selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. If the sentence is procedurally sound, we then consider its substantive reasonableness under a "deferential abuse-of-discretion standard." Id. at 52. While a district court's explanation for the sentence must "support the degree of the variance," id. at 50, it need not find "extraordinary circumstances" to justify a deviation from the Guidelines, id. at 47. Rather, because district courts are "in a superior position to find facts and judge their import," all

5

sentencing decisions — "whether inside, just outside, or significantly outside the Guidelines range" — are entitled to "due deference." Id. at 41, 51.

With these principles in mind, we turn to Spencer's procedural and substantive challenges to the sentence.

A.

Spencer first contends that the district court erred by failing to provide advance notice of its intention to depart from the advisory Guidelines range. See Fed. R. Crim. P. 32(h) (requiring a district court to provide "reasonable notice" that it is considering a departure from the Guidelines "on a ground not identified for departure either in the presentence report or in a party's prehearing submission"). Spencer notes that the district court repeatedly characterized the sentence as an upward "departure," see J.A. 128, 133-35, yet never advised the parties that it was contemplating such an action. Consequently, he claims that he was deprived of the opportunity to challenge the increased sentence. There are several difficulties with this argument, which we address in turn.

For starters, the boundary between departures and variances is often murky, and this case especially confounds the distinction. Because the circumstances surrounding threats vary substantially, § 2A6.1 gives district courts latitude to depart from the Guidelines. See § 2A6.1 cmt. n.4(A). The provision does

6

not set forth a comprehensive departure framework for threats cases, but instead invites district courts to apply other generic departures as necessary. Id. (referencing additional departures in Chapter Five). Given the dearth of guidance for capturing the seriousness of such a factually variable offense, the considerations underlying a departure in a threats case converge with those underlying a variance to an unusual degree.

Nonetheless, a measure of formality must mark the sentencing procedure, and the district court was simply too casual about the course it intended to undertake. At the resentencing hearing the court repeatedly stated that it would "upwardly depart," see J.A. 128, 133-35, but its reasoning — resting on the § 3553(a) factors rather than a departure provision — supported a variance, see J.A. 126-28. Likewise, on the Statement of Reasons for the judgment the court checked the box for a variance sentence and cited various § 3553(a) factors as the basis for deviating from the Guidelines. J.A. 244-45. While it may be true that "the practical effects of applying either a departure or variance are the same," see United States v. Diosdado-Star, 630 F.3d 359, 365 (4th Cir. 2011), the court's colloquial migration between the two concepts was at a minimum imprecise.

We conclude, nonetheless, that Spencer cannot establish that any lack of notice affected his substantial rights. Because

7

Spencer did not raise the issue in the district court, we review for plain error. Fed. R. Crim. P. 52(b); Henderson v. United States, 133 S. Ct. 1121, 1126-27 (2013). Spencer thus bears the burden of showing "that, but for [the error claimed], the result of the proceeding would have been different." United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004).

Spencer summarily asserts that he was prejudiced by the lack of formal notice, but the district court repeatedly telegraphed that it might deviate from the Guidelines. Throughout the original sentencing hearing, the letter's effect on the victim was front and center. See J.A. 42–43, 46–47, 52, 54, 58–59. And it was no secret that the court was troubled by the "very, very serious" nature of the offense: It stressed the need to provide "just punishment" and "adequate deterrence" and remarked that the initial Guidelines range was "very kind to [Spencer]." J.A. 59-61. Accordingly, when the removal of the § 2A6.1(b)(1) enhancement resulted in an even lower Guidelines range, Spencer had every reason to believe that the court might adopt an above-Guidelines sentence. Indeed, at resentencing the court stated that the original sentence was "fair and fit," J.A. 127, and that it would have imposed the same sentence even if the Guidelines had not applied, J.A. 133. Spencer thus had numerous opportunities to address the district court's concerns about the letter's effect upon the victim and "the record does

8

not indicate that a statement announcing th[e] possibility [of an increased sentence] would have changed the parties' presentations in any material way." Irizarry v. United States, 553 U.S. 708, 715 (2008).

                                B.

Spencer also asserts that his 45-month sentence is substantively unreasonable. His substantive (or hybrid procedural / substantive) argument is essentially that the sentence was too much. In particular, he insists that the severity of the sentence rested on improper sentencing factors and unfounded factual findings. For the reasons that follow, we disagree.

As an initial matter, we simply do not find that the district court rested its sentence on improper grounds. Pursuant to our mandate, the court made clear that it was not applying any additional enhancements at resentencing. Rather, the district court based its sentence on the intended effect on the victim, explaining that the reduced Guidelines range was "totally inadequate" given the serious nature of a threat accompanied by ostensible poison. J.A. 118. In other words, the court tailored its sentence in light of traditional § 3553(a) sentencing factors such as deterrence and punishment. See J.A. 127. This sort of particularized assessment is the hallmark of individualized sentencing, see Gall, 552 U.S. at 50, and we see

                                9

no reason to question the district court's decision to deviate from the Guidelines on this basis.

The inferences drawn by the district court here lay within the bounds of its discretion. The trial court, to be sure, used some vivid rhetoric in explaining the sentence, surmising that the victim "thought somebody had sentenced her to death," J.A. 127, and "it's something one can't forget. . . . It's like war," J.A. 59. But these expressions were hardly divorced from the facts of Spencer's case. After all, Spencer had sent a letter that threatened death. To compound the victim's horror, he included with the letter dried toothpaste that resembled anthrax. The U.S. Marshals took the threat seriously and ordered the victim to lock herself in a confined space. And she waited alone with the potential toxin until the authorities could determine its true nature. From these facts, the rest are reasonable inferences that could be drawn by anyone confronted with a "prank" that was distinctly unfunny.

We are mindful that we have charged district courts to explain the basis for their sentence. See United States v. Carter, 564 F.3d 325, 328-29 (4th Cir. 2009) (instructing that the district court must "justify [its] sentence with an individualized rationale"); see also Gall, 552 U.S. at 50 (advising that the judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote

10

the perception of fair sentencing"). But there is also a balance to be struck. We want trial judges to offer a "rationale tailored to the particular case at hand," Carter, 564 F.3d at 330, but we also take seriously the Supreme Court's injunction that those same sentencing rationales are in turn entitled to "due deference" on appeal, Gall, 552 U.S. at 51. The district court's expressions of dismay at Spencer's actions were thus not impermissible so long as they bore upon the § 3553(a) factors of deterrence and punishment. Indeed, many upward departures or variances will be accompanied by some expression of concern that the Guidelines do not reflect the full seriousness of the offense.

Spencer understandably objects to the increased sentence. But he acknowledged that the court "has the right to impose a sentence it deems sufficient but not greater than necessary." J.A. 120. Although Spencer contends that there was no substantial disruption of government functions here, see U.S.S.G. § 2A6.1(b)(4)(A), that did not deprive the district court of the right to apply the § 3553(a) factors, specifically, in this age of unbalanced acts, the need to deter depredations of this kind in the future. It was not error therefore for the district court to recognize that government's functioning depends on the indispensable efforts of an underappreciated workforce and that no employee deserves to endure what Spencer

11

indisputably intended for the recipient of the letter to endure here. The district court could reasonably believe that the effect on the victim was no small matter and, indeed, if there be such a thing, that this was no ordinary threat. We hold that its sentence was substantively reasonable.[*]

III.

The judgment of the district court is accordingly

AFFIRMED.

---

[*] We decline to draw an inference of actual vindictiveness from the district court's acknowledgment on remand that Spencer "successfully appealed the prior sentence." J.A. 128. To be sure, "[d]ue process requires that vindictiveness play no role in resentencing the defendant." United States v. Olivares, 292 F.3d 196, 198 (4th Cir. 2002). But this passing reference to an appeal does not allow us to infer actual vindictiveness on the part of the trial court, particularly where the district court's concern from the beginning rested on non-vindictive factors such as the serious nature of this offense and the need to deter others like it in the future.