**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4457**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

PATRICIA G. SULLIVAN,

                Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Bruce H. Hendricks, District Judge.  (6:16-cr-00540-BHH-1)

Argued:  September 28, 2018                 Decided:  December 6, 2018

Before NIEMEYER and KEENAN, Circuit Judges, and Norman K. MOON, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Jeffrey Mikell Johnson, Eutawville, South Carolina, for Appellant.  William J. Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.  **ON BRIEF:**  Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Patricia G. Sullivan pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. The district court deviated upward from the advisory Guidelines range and imposed a 48-month sentence. Sullivan now contends that her sentence was procedurally and substantively unreasonable. For the reasons that follow, we affirm.

I.

Appellant Patricia Sullivan served as Postmaster in Greenville County, South Carolina. She also operated a publishing company, HYPD Publishing. In March 2009, HYPD published *The Struggle of Love*, an autobiography by Sharon Johnson. Following the book's publication, Sullivan and Johnson fabricated an elaborate narrative that filmmaker Tyler Perry had purchased the rights to *The Struggle of Love* with the intention of depicting Johnson's life story in a movie and producing a reality television show starring Johnson. Claiming to need bridge loans while awaiting a payment of $81 million from Perry's studio, Sullivan and Johnson targeted family, friends, and co-workers for "investments," promising lucrative returns. In total, the pair fraudulently obtained $385,425 from 33 victims.

In January 2017, Sullivan and Johnson each pleaded guilty to one count of conspiracy to commit wire fraud. The district court calculated each defendant's advisory Guidelines range as between 27 and 33 months' imprisonment. J.A. 235. At a joint sentencing hearing on April 26, 2017, the district court heard testimony from nine victims. Six of these victims spoke exclusively of their interactions with Sullivan, and, of

2

those six, three were Sullivan's close family members: her brother, sister, and an aunt who helped raise her. J.A. 128–50. Both defendants addressed the court. Johnson gave a brief statement expressing remorse. J.A. 157. Sullivan offered longer remarks, noting that she felt "really, really bad about a couple of people" but stating that she "never sat down and schemed or scammed anything or anybody." J.A. 164–65. Sullivan also asserted that she and Johnson did in fact have a "movie contract" with "Tyler Perry's cousin," and that she "believed in what [she] was doing" throughout the conspiracy, stating that "[t]he goal was a movie and that is where we were heading." J.A. 164.

The district court sentenced Johnson to 27 months' imprisonment and announced that Sullivan's sentencing would be deferred by 60 days, putting Sullivan "on notice of a potential upward departure" as the court considered whether the Guidelines range was "insufficient to satisfy the goals of punishment here." J.A. 170–71.

On June 16, 2017, the district court sentenced Sullivan to 48 months' imprisonment, 15 months above the advisory Guidelines range and 21 months above Johnson's sentence. The district court framed this sentence as an "upward departure . . . or alternatively an upward variance." J.A. 200. In explaining why an upward deviation from the advisory Guidelines range was appropriate, the district court cited Sullivan's aggravated role in the conspiracy, lack of remorse, and willingness to target family members. The district court further stated that, although it believed it had properly imposed an upward departure, it "would have imposed this same sentence as an alternate variant sentence in light of all of the [§] 3553 factors." J.A. 206–07.

3

Sullivan's counsel made a motion for reconsideration, arguing that Sullivan and Johnson were "equally involved" in the conspiracy, and that Sullivan's comparatively lengthy sentence—"approximately twice as long" as Johnson's—was unwarranted. J.A. 207–08. The district court denied the motion, stating that the two defendants were "not similarly situated" given Sullivan's "education, her skill, her polish, [and] her ability to carry out the scheme," as well as her "misuse of her role as a public official" and her targeting of family members. J.A. 208–09.

## II.

We review a sentence for both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). We first ensure that the district court committed no significant procedural error, such as "improperly calculating [ ] the Guidelines range, . . . selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Spencer*, 848 F.3d 324, 328 (4th Cir. 2017) (quoting *Gall*, 552 U.S. at 51). If the sentence is procedurally sound, we then consider its substantive reasonableness under a "deferential abuse-of-discretion standard." *Id.* At this step, we ask whether the district court abused its discretion in "determining that the § 3553(a) factors supported the sentence and justified a substantial deviation from the Guidelines range," giving "due deference" to the district court's decision that "the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Diosdado-Star,* 630 F.3d 359, 366 (4th Cir. 2011). While a district court's explanation for the sentence must "support the degree of the variance," it need not find "extraordinary circumstances" to justify a deviation from the Guidelines. *Spencer*,

4

848 F.3d at 328. Rather, because district courts are "in a superior position to find facts and judge their import," all sentencing decisions—"whether inside, just outside, or significantly outside the Guidelines range"—are entitled to "due deference." *Id.*

With these principles in mind, we turn now to Sullivan's arguments.

III.

Sullivan raises two procedural arguments against her sentence. First, she contends that the district court made erroneous factual findings unsupported by the record. Second, she argues that the district court failed to adequately explain its imposition of a 48-month sentence. Both arguments are without merit.

A.

Sullivan first argues that the district court made erroneous factual findings regarding her role in the conspiracy, abuse of her position as Postmaster, and lack of remorse. A sentencing court's factual findings are reviewed for plain error. *See United States v. White*, 771 F.3d 225, 235 (4th Cir. 2014); *United States v. Dowell*, 771 F.3d 162, 170 (4th Cir. 2014). We must uphold any factual finding of the sentencing court that appears "plausible in light of the record viewed as a whole," even if we might have "weighed the evidence differently." *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012). Under this deferential standard of review, we uphold each of the three factual findings that Sullivan challenges.

1.

Sullivan contends that the record lacks evidence that she played a greater role in the offense than her co-conspirator Johnson. The district court noted that Sullivan's

5

"polish," education, and stature as a public official gave her a more "extreme ability" to carry out the conspiracy than Johnson, who the district court viewed as "more of a street person." J.A. 209. Additionally, the district court asserted that Sullivan took "extreme advantage" of family members and co-workers in a "much more insidious and extreme and underhanded way." *Id*. The district court arguably overemphasized Sullivan's role in the conspiracy relative to Johnson's role. In Sullivan's pre-sentence report, Johnson and Sullivan were depicted as equal partners. J.A. 227–29.[1] Without question, Johnson played a significant role in the conspiracy, writing the underlying biography, recruiting victims, meeting with financial advisers, and creating fraudulent sales agreements and bank statements. J.A. 227–28. However, the record, "viewed in its entirety," can plausibly be read to support the district court's finding that Sullivan's role in the conspiracy was comparatively more invidious. *Wooden*, 693 F.3d at 451.

The record shows that Sullivan was a more sophisticated actor, given her stature as Postmaster and her superior educational achievements (an Associate's Degree) compared to Johnson, who did not complete high school. J.A. 126. Several victims who spoke at the sentencing hearing testified that they were persuaded to give money to Sullivan in part because of their "high regard for her accomplishments," J.A. 131, and her position as Postmaster. J.A. 148. Moreover, the record supports the district court's finding that

[1] Sullivan makes much of the Government's remark at sentencing that she and Johnson were "very much equal partners" in the conspiracy. J.A. 194–95. This selective quotation misstates the Government's position. Later in the same sentence Sullivan quotes, the Government asserted that Sullivan's "education, skills, [and] position in the community" allowed Johnson and Sullivan to "push [the conspiracy] much further than Sharon Johnson would have been able to do on her own." J.A. 195.

Sullivan's role in the conspiracy was more "extreme" than Johnson's. J.A. 209. Sullivan undertook several unilateral actions in furtherance of the conspiracy, including writing bad checks to victims, contracting to pay $665,000 in cash for an upscale home, contacting a rental agency to rent a property on behalf of a "celebrity client," forging the names of three victims on loan applications, and contacting various potential victims, including a retired postal employee. J.A. 227, 229. Additionally, Sullivan targeted and defrauded close family members. J.A. 128–29; 132–36. Nothing in the record establishes that Johnson similarly targeted close family members, and, of the nine victims who spoke at the sentencing hearing, six spoke exclusively about their interactions with Sullivan. J.A. 128–38; 148–50. Accordingly, although other factfinders may not have concluded that Sullivan played a greater role in the conspiracy than Johnson, the district court's conclusion that she did is plausible and not clearly erroneous in light of the record as a whole.

2.

Sullivan next challenges the district court's finding that victims "trusted" Sullivan in part because of her "credentials as a public official," and that Sullivan used that trust to deceive victims. J.A. 202–03, 209. Here again, we affirm the district court's factual finding as "plausible in light of the record viewed as a whole." *Wooden*, 693 F.3d at 451. The record includes ample support for the district court's determination that Sullivan exploited the trust victims placed in her as a public official. For instance, one victim testified that he "trusted" Sullivan because of his "high regard for her accomplishments." J.A. 131. The owner of the home Sullivan contracted to purchase testified that she agreed

7

to the contract because she concluded the deal "ha[d] to be a legitimate thing" since Sullivan was the "Postmaster of Greenville County" and "somebody who has a name that's known." J.A. 148. Additionally, as Sullivan concedes in her brief, she utilized her contacts as a postal employee on at least one occasion in furtherance of the conspiracy when she requested a loan from a retired postal worker. J.A. 229. Thus, there is an adequate basis in the record for the district court's determination that Sullivan exploited her role as Postmaster in carrying out the conspiracy.

3.

Sullivan faults the district court's finding that she "showed no remorse for her actions" and even "tried to shift the blame to the victims for their role in seeking financial windfalls by lending her money." J.A. 203. We must give "great deference" to a district court's decision regarding a defendant's acceptance of responsibility because the "sentencing judge is in a unique position to evaluate a defendant's" contrition. *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007). Here, the record supports the district court's finding that Sullivan did not demonstrate genuine remorse. Sullivan apologized to some victims and stated that she felt "really, really bad about a couple of people," implying there were other victims she did not feel "bad about." J.A. 165. She also stated that she "believed in what [she] was doing" and was confident that "[t]he money was going to come in." J.A. 164. Sullivan made several fantastical claims that demonstrate a lack of remorse, including that she and Johnson had a "movie contract" with "Tyler Perry's cousin" and a "perfume deal with Fantasia," the Season 3 winner of the television show *American Idol*. *Id*. Additionally, Sullivan made comments impliedly

8

blaming victims, stating that "things just went south" once "people went on the internet," and that she remained "in close communications with the victims" until "they shut down." J.A. 164–65. Moreover, two victims testified that Sullivan never apologized to them or acknowledged any wrongdoing prior to her guilty plea. J.A. 133–34, 147. Accordingly, the district court's conclusion that Sullivan was not genuinely remorseful had adequate support in the record.

In sum, all three of the challenged factual findings are plausible in light of the record as a whole. The district court did not commit plain error in making these factual findings.

B.

Sullivan next argues that the district court committed procedural error by not adequately explaining its sentence. District courts must "explain the basis for their sentence" and provide an "individualized rationale" that is "tailored to the particular case at hand." *United States v. Spencer*, 848 F.3d 324, 329 (4th Cir. 2017) (quoting *United States v. Carter*, 564 F. 3d 325, 328–30 (4th Cir. 2009)). A sentencing court also must address a defendant's "nonfrivolous reasons for imposing a different sentence" and "explain why [she] has rejected those arguments." *Carter*, 564 F.3d at 328.

As we discuss below, the district court was imprecise about whether the upward deviation from the Guidelines advisory range it imposed was a variance or an upward departure.[2] Nevertheless, the district court provided an "individualized rationale" for

---

[2] A "departure" is a "change from the final sentencing range computed by examining the provisions of the Guidelines themselves," while a "variance" occurs where

9

Sullivan's sentence. *Spencer*, 848 F.3d at 329 (finding similar imprecision not grounds for reversal under plain error standard). The district court discussed the relevant § 3553(a) factors underlying its sentence and addressed counsel's objections about whether Sullivan and Johnson were similarly situated defendants. J.A. 200–10. Moreover, any imprecision in the district court's explanation of Sullivan's sentence was a far cry from cases where we have vacated sentences on procedural grounds because of a district court's inadequate explanation. For instance, in *Carter*, 564 F.3d at 329, we vacated a sentence on procedural grounds where the district court gave no explanation for "how the sentencing factors applied to the facts of the particular case before it" but rather articulated a justification that "could apply to *any* sentence." The district court's explanation and application of the § 3553(a) factors was far more thorough here. Accordingly, we find the district court's explanation of its sentence was adequate.

Having rejected Sullivan's two procedural arguments, we turn now to Sullivan's primary argument that the district court imposed an impermissible upward departure.

IV.

In announcing Sullivan's 48-month sentence, the district court oscillated between calling the sentence an "upward departure" and a "variance" pursuant to U.S.C. §

---

the sentencing judge "imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a)." *United States v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012). Although the "practical effects of applying either a departure or variance are the same," we have previously noted that "colloquial migration between the two concepts" is "at a minimum imprecise." *Spencer*, 848 F.3d at 328 (quoting *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011)).

3553(a). Sullivan contends that the district court predominately framed the sentence as an upward departure and weighed two factors prohibited for consideration in imposing upward departures under U.S.S.G. § 5K2.0, namely Sullivan's aggravated role in the conspiracy and lack of remorse. Sullivan argues that this error warrants reversal of her sentence. We disagree.

To be sure, the district court was "at a minimum imprecise" about whether it was imposing an upward departure or a variance, *Spencer* 848 F.3d at 328, at times referencing an "upward departure" and U.S.S.G. § 5K2.0 and at times referencing an "upward variance" and the § 3553(a) factors. J.A. 200–01; 204–05; 207. Moreover, to the extent that the district court framed Sullivan's sentence as an "upward departure," its consideration of Sullivan's aggravated role in the conspiracy and lack of remorse was improper. J.A. 202–03, 208–09. *See* U.S.S.G. 5K2.0 (sentencing court "may not depart from the applicable guideline range" based on the "defendant's acceptance of responsibility for the offense" or the "defendant's aggravating or mitigating role in the offense"). However, rather than "wading into the morass" of whether the district court's imprecision affirmatively constituted error, "we may simply assume that an error occurred because the alleged error is harmless." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011). Under an "assumed error harmlessness inquiry," we affirm a district court's allegedly erroneous sentence if (1) the district court made clear that it "would have reached the same result even if" it had not made the alleged error and (2) the "sentence would be reasonable" absent the alleged error. *Id*. It would "make no sense" to "set aside a reasonable sentence" where the district court "has already told us

11

that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *Id*. (quoting *United States v. Keene*, 470 F.3d 1347, 1350 (11th Cir. 2006)). Here, the district court's sentence satisfies both prongs.

Under the first prong, we assess whether the district court made clear that "it would have reached the same result" in imposing a 48-month sentence even if it had not imposed an upward departure on grounds prohibited by § 5K2.0. The district court explicitly stated that it "would have imposed this same sentence as an alternate variant sentence in light of all of the [§] 3353 factors and in light of the totality of the circumstances present in this case." J.A. 206–07. We have consistently affirmed sentences where, as here, the district court made an express statement that it would have imposed the same sentence under § 3553 regardless of any error. *See, e.g., United States v. McDonald,* 850 F.3d 640, 644–45 (4th Cir. 2017); *United States v. Gomez-Jimenez,* 750 F.3d 370, 383 (4th Cir. 2014); *United States v. Hargrove*, 701 F.3d 156, 163–64 (4th Cir. 2012). [3] Given the district court's explicit statement that it would have imposed the

---

[3] Sullivan contends that the district court's statement that it would have imposed the same sentence as a variance is insufficient to vitiate the underlying error because the district court gave no additional reasons under § 3553 to justify the variance beyond the grounds prohibited by § 5K2.0, namely Sullivan's heightened role in the conspiracy and lack of remorse. This argument fails. The district court explicitly referenced factors beyond Sullivan's heightened role in the conspiracy and lack of remorse, including the need to instill in Sullivan respect for "the laws of society," "afford adequate deterrence," and "protect the public from further crimes." J.A. 204. All of these factors are specifically enumerated in § 3553(a)(2). Moreover, to the extent that the district court also considered Sullivan's role in the conspiracy as part of the § 3553 variance analysis, this would be entirely appropriate under both § 3553(a)(1), which requires consideration of the "nature and circumstances of the offense and the history and characteristics of the defendant," and § 3553(a)(2)(A), which requires a sentencing judge to consider the "seriousness of the offense."

same 48-month sentence as a variance in light of all the § 3553(a) factors, we find that the district court made it sufficiently clear that it "would have reached the same result" even if it had not framed Sullivan's sentence as an upward departure and considered factors prohibited under § 5K2.0. *Savillon-Matute*, 636 F.3d at 123.

Under the second prong, we assess whether Sullivan's 48-month sentence, viewed as a variance under § 3553, is substantively reasonable. "Substantive reasonableness examines the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Hargrove*, 701 F.3d 156, 160–61 (4th Cir. 2012). A major variance from the advisory Guidelines range "should be supported by more significant justification than a minor" variance. *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017). However, the fact that a variance departs upward from the advisory range does not "alone render it presumptively unreasonable." *United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012). Such upward variances are "reviewed under the same deferential abuse-of-discretion standard" as sentences imposed within the Guidelines range. *Id*. We have affirmed upward variances significantly higher than the 15-month variance imposed here in cases where the district court adequately explained its sentence in light of the § 3553(a) factors. *See, e.g., Rivera-Santana*, 668 F.3d at 106 (affirming 90-month variance where district court gave "individualized assessment . . . in light of the § 3553(a) factors"); *Diosdado-Star*, 630 F.3d at 367 (affirming sentence six years above advisory range where court adequately explained variance in under § 3553(a) factors); *United States v. Evans*, 526 F.3d 155, 165 (4th Cir. 2008) (upholding sentence eight years

13

above advisory range where court found that "*both* the Guideline departure provisions *and* the 3553(a) factors supported its sentence," and sentence was "well-justified by § 3553(a) factors" (emphasis in original)).

Here, we find Sullivan's 48-month sentence substantively reasonable. Although the district court's explanation of Sullivan's sentence was imprecise, the court referenced application of the § 3553(a) factors at least five times when announcing Sullivan's sentence. (JA 200–01, 204–05). In addition to noting that it would have imposed the same sentence as a variance "in light of all of the [§] 3553(a) factors," J.A. 206–07, the district court described Sullivan's "characteristics," as well as the "nature and circumstances of the offense," noting in particular Sullivan's deception of family members and victims' trust in Sullivan as a public official. J.A. 202–03. *See* 18 U.S.C. § 3553(a)(1). Additionally, the district court noted that Sullivan's lack of remorse demonstrated a heightened need to "deter future criminal conduct by this Defendant" and instill "proper respect for the law." *See* § 3553(a)(2)(A)-(B). Moreover, the court noted that it had considered the need to "protect the public from further crimes of the Defendant," as called for under § 3553(a)(1)(C). Accordingly, we find that Sullivan's sentence was "well-justified by the § 3553(a) factors" and thus substantively reasonable. *Evans*, 526 F.3d at 165.

We find no merit in Sullivan's two arguments challenging the substantive reasonableness of her sentence. First, Sullivan contends that the district court failed to explain why an above-Guidelines range sentence was necessary to deter future crimes and address the harm inflicted on victims for Sullivan but not for Johnson. But the district

14

court addressed this argument explicitly in response to Sullivan's motion to reconsider the 48-month sentence. J.A. 207–08. In denying the motion, the district court stated that Sullivan and Johnson were "not similarly situated" given Sullivan's relative "education, her skill, her polish, her ability to carry out the scheme," her "misuse of her role as a public official," and the "extreme advantage" Sullivan took over family members. J.A. 208–09. As we held above, these factual distinctions are plausible in light of the record as a whole. Thus, contrary to Sullivan's assertions, the district court did explain its view that Sullivan's conduct merited a higher sentence than Johnson's.

Second, Sullivan argues that her 48-month sentence creates an unwarranted sentencing disparity between her and other similarly situated defendants convicted of fraud offenses. *See* 18 U.S.C. 3553(a)(6). Sullivan cites U.S. Sentencing Commission data that the mean prison sentence for defendants convicted of fraud offenses in 2016 was 25 months, while the median was 13 months. Extrapolating from this data, Sullivan's 48-month sentence was nearly double the mean sentence, and more than triple the median sentence. Additionally, Sullivan cites data that only 2.1% of defendants convicted of fraud offenses received an above-Guidelines sentence in 2016 and argues that she is not among the worst 2.1% of such defendants.

In reviewing alleged sentencing disparities, we assess whether the disparity between a particular defendant and other similarly situated defendants is "substantial." *United States v. Zuk*, 874 F.3d 398, 411–12 (4th Cir. 2017). Even if a sentence "is more severe than average, that fact does not mean it was unwarranted." *United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012) (noting that "comparisons of sentences

15

may be treacherous because each sentencing proceeding is inescapably individualized").

A reviewing court should not "isolate a possible sentencing disparity to the exclusion of all the other § 3553(a) factors." *Id.* (citing *United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) ("[A]verages of sentences that provide no details . . . are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments . . . that distinguish individual cases.")).

Although Sullivan may well be correct that her sentence is more severe than the national average for fraud-related offenses in 2016, this fact alone does not negate the district court's consideration and application of the § 3553(a) factors. Even if the district court failed to address all possible sentencing disparities between Sullivan and other similarly situated defendants convicted of fraud offenses, a sentencing court "need not explain every disparity during sentencing." *Zuk*, 874 F.3d at 412. Accordingly, because the district court was not required to address all possible statistical sentencing disparities, and because the district court's application of the § 3553(a) factors to Sullivan was individualized and thorough, we reject Sullivan's argument that her 48-month sentence reflects an unwarranted sentencing disparity between Sullivan and other similarly situated defendants.

In sum, despite the district court's "colloquial migration between" imposing an upward departure and an upward variance, we affirm the court's imposition of a 48-month sentence. *Spencer*, 848 F.3d at 328 (4th Cir. 2017). Because the district court made clear that it "would have reached the same result" as an upward variance, and because the 48-month sentence the district court imposed was substantively reasonable

16

under the § 3553(a) factors, any error the court committed by appearing to impose an upward departure on grounds prohibited by § 5K2.0 was harmless. *Savillon-Matute*, 636 F.3d at 123.

V.

The judgment of the district court is accordingly

*AFFIRMED*.