**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

JOSEPH CASE BURGUM, AKA Joseph
Charles Barrett, AKA Seal A,
　　　　　　*Defendant-Appellant.*

No. 09-50449

D.C. No.
8:07-cr-00061-
CJC-1

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
September 1, 2010—Pasadena, California

Filed January 25, 2011

Before: Diarmuid F. O'Scannlain, Raymond C. Fisher and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Fisher;
Dissent by Judge O'Scannlain

## COUNSEL

Sean K. Kennedy, Federal Public Defender, and Alexandra W. Yates (argued), Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

George S. Cardona, Acting United States Attorney, Douglas F. McCormick, Assistant United States Attorney, and Anne C. Gannon (argued), Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

## OPINION

FISHER, Circuit Judge:

Joseph Case Burgum appeals the district court's imposition of a 180-month sentence of imprisonment following his guilty plea to two counts of armed bank robbery in violation of 18 U.S.C. § 2113. Burgum contends that the district court improperly used the statutory maximum instead of the U.S. Sentencing Guidelines range as a starting point for sentencing and improperly treated his inability to pay restitution as an aggravating factor. He also argues that the sentence imposed was substantively unreasonable. Because we conclude that reliance on Burgum's inability to pay was plain error that seriously affected the fairness and integrity of the sentencing proceeding, we vacate and remand for resentencing.

## I.

In June 2008, Burgum pled guilty to two counts of bank robbery. The robberies took place in Anaheim, California and Scottsdale, Arizona in May 2003. Burgum used the same technique for both robberies: he first met with a bank manager, posing as an FBI officer, then attached a metal box to the manager's wrist using handcuffs. He then told the manager that the box was a bomb he could detonate remotely. Burgum also showed both managers the gun he was carrying. He threatened to use the gun during the Scottsdale robbery, when the manager resisted his demands. When Burgum learned he had been indicted for bank robbery several years later, he turned himself in.

After Burgum's indictment, the probation office prepared a pre-plea presentence report (PSR) that placed Burgum in criminal history category II. Burgum pled guilty after reviewing this draft of the PSR, which led him and the government to expect a Sentencing Guidelines range of 108-135 months. In plea discussions, the government agreed to recommend a sentence at the low end of that guidelines range. The probation office later realized, however, that due to a clerical error, the wrong draft PSR had been disclosed to the parties. The correct draft showed Burgum to be in criminal history category VI and recommended a guidelines range of 188-235 months. Consistent with the correct draft, the final PSR included the higher guidelines range calculation and recommended a sentence of 188 months, at the low end of the higher range. The final PSR also recommended ordering $258,280 in restitution.

Recognizing that plea negotiations had proceeded with the understanding that Burgum would be sentenced according to the 108-135 month guidelines range originally calculated, the government recommended a sentence at the low end of that lower guidelines range in its sentencing memorandum. Burgum agreed with the government's recommendation.

At sentencing, the district court calculated a guidelines range of 108-135 months, using a different calculation method than that used in any version of the PSR.[1] The court then listed various mitigating factors it found persuasive but also emphasized several "very troubling, aggravating factors." In describing aggravating factors, the district court focused on "the nature of these bank robberies," including the use of a hoax bomb, the impersonation of an FBI agent and the "infliction of emotional distress on the bank manager and the tellers." The court also mentioned "[o]ne additional aggravating

---

[1]Although the district court arrived at a different guidelines range than the final PSR, the parties do not dispute the accuracy of the calculation. Accordingly, we proceed on the assumption that it is correct.

factor": Burgum was very unlikely to be able to pay the $258,280 in restitution the court intended to order. In addition to ordering the restitution payment, the court ultimately imposed a 180-month term of imprisonment.

## II.

The substantive reasonableness of a sentence is reviewed for abuse of discretion. *See United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009). Procedural sentencing errors raised for the first time on appeal are generally reviewed for plain error. *See United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010), *petition for cert. filed*, __ U.S.L.W. __ (U.S. Nov. 19, 2010) (No. 10-7645).[2]

## III.

Burgum first argues that instead of "begin[ning] by determining the applicable Guidelines range" as required by *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc), the district court improperly based its sentencing analysis on the statutory maximum. Burgum did not object to this alleged error below, so our review is for plain error, which we conclude did not occur. The court properly calculated the guidelines range as the starting point, then considered the statutory maximum and applied mitigating factors.

Had the district court used the statutory maximum rather than the guidelines range as the baseline for sentencing, it would have been reversible error. *See id.* at 993. The district court mentioned "working from the statutory maximum and building downward," but the record clarifies that the court

---

[2]To the extent we have discretion not to apply plain error review, we decline to exercise that discretion in this instance. *See Evans-Martinez*, 611 F.3d at 642; *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267-68 (9th Cir. 2001) (explaining that we have discretion to consider issues raised for the first time on appeal under limited circumstances).

used the guidelines as a "starting point" and recognized its obligation to consider the 18 U.S.C. § 3553(a) sentencing factors.

**[1]** Specifically, the court said it would "in normal circumstances be looking, believe it or not, at the statutory maximum" and would then be "working down." But before discussing the statutory maximum, the court made clear that the "starting point of [its] analysis [was] the guideline range." The court concluded that the aggravating factors warranted an upward adjustment all the way to the statutory maximum, and then applied mitigating factors to reduce that hefty sentence. Thus the court properly used the guidelines as the "initial benchmark," *id.* at 991 (citation and internal quotation marks omitted), and its repeated references to the guidelines "demonstrate that the court 'remain[ed] cognizant of [them] throughout the sentencing process.' " *United States v. Ressam*, 593 F.3d 1095, 1124 (9th Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)). There was no plain error.

## IV.

Burgum also contends that his 180-month sentence is substantively unreasonable, pointing out that both parties and the probation office recommended a 108-month sentence. We conclude that the district court's sentencing decision was rational and substantiated by the record. We therefore hold that the district court did not abuse its discretion and that the sentence imposed was not substantively unreasonable.

**[2]** At sentencing, the prosecution and the probation office recommended the low sentence to avoid penalizing Burgum for pleading guilty in reliance on the erroneous draft PSR, which reported the 108-135 month guidelines range. The district court, however, viewed the 108-month sentence as inappropriate for a "very cruel and tormenting" offense and found the low 108-month recommendation to be an undeserved

"windfall." The court's finding was rational, clearly explained and closely tied to the factual record.[3] The 180-month sentence was not unreasonable. *See United States v. Valencia-Barragan*, 608 F.3d 1103, 1108-09 (9th Cir. 2010) (rejecting the defendant's contention that the sentence imposed was substantively unreasonable, in light of "the nature of [the defendant's] crime").

Burgum also argues that, because the district court referred to his offense as "about as bad a bank robbery [as] I can imagine," the sentence imposed left "little room for marginal deterrence." The district court was not required to conform the sentence to those imposed in similar cases, however. Although comparability is a legitimate sentencing factor, divergence from sentences imposed in similar cases is permissible so long as the court is attentive to relevant sentencing factors, as the district court was here. *See United States v. Marcial-Santiago*, 447 F.3d 715, 719 (9th Cir. 2006).

Accordingly, we reject Burgum's contention that the district court abused its discretion by imposing a substantively unreasonable sentence.

## V.

Finally, we conclude that the district court did plainly err by treating Burgum's inability to pay restitution as an aggravating sentencing factor. The district court explicitly cited Burgum's financial status as a factor aggravating the severity of his conduct. After reviewing mitigating and aggravating evidence, the court added that:

> One additional aggravating factor that I didn't men-

---

[3] In holding that the district court offered a reasonable explanation for deviating from the recommended sentence, we do not consider its reliance on Burgum's inability to pay restitution, which was improper for the reasons explained in Part V, below.

> tion is I just think realistically the chances of restitu-
> tion in this case are probably slim, maybe even null
> in light of the amount of restitution being $258,280,
> Mr. Burgum not really having the finances or the
> financial condition to even pay a fine.

The court went on to base its calculation of the sentence on "these [§ 3553] objectives, the aggravating and mitigating factors, [and] the guideline range."

We recognize that the district court mentioned Burgum's inability to pay restitution only once during the sentencing hearing. We also acknowledge that the court undoubtedly relied more heavily on other factors in reaching its ultimate sentencing determination, especially given its focus on the nature of Burgum's crime. Moreover, because Burgum's counsel unfortunately did not object to the district court's consideration of his inability to pay, the court had no occasion to clarify the weight, if any, it gave to this consideration. We cannot assume, however, that the court gave *no* weight to this factor. After all, the court's reference to Burgum's inability to pay was quite clear. Even this brief reference is troubling in light of the well settled principle that inability to pay restitution does not justify imposition of a longer term of imprisonment.

Because Burgum did not object in the district court, our review is for plain error. We may correct only "a plain forfeited error affecting substantial rights [that] 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Olano*, 507 U.S. 725, 736 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). We conclude that all of the *Olano* requirements are satisfied.

First, it is well established that the Constitution forbids imposing a longer term of imprisonment based on a defendant's inability to pay restitution. The Supreme Court first

articulated this principle in *Williams v. Illinois*, 399 U.S. 235, 240-42 (1970), which held that the Constitution forbade the state from imposing on the indigent defendant a term of imprisonment beyond the statutory maximum so that he might "work off" a fine he was unable to pay. In *Tate v. Short*, 401 U.S. 395, 398-99 (1971), the Court extended *Williams*, concluding that the Fourteenth Amendment prohibits imposition of a jail sentence as an alternative to a monetary penalty for a defendant unable to pay. *Bearden v. Georgia*, 461 U.S. 660 (1983), again held that the Fourteenth Amendment forbids a sentencing court from imposing a term of imprisonment in lieu of a fine the defendant cannot pay, at least without considering alternative means of punishment or finding willful nonpayment. *See id.* at 667-68 ("[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it.").

**[3]** To be sure, *Bearden* recognized that "the sentencing court can consider the entire background of the defendant, including his employment history and financial resources." *Id.* at 670 (citing *Williams v. New York*, 337 U.S. 247, 250 & n.15 (1949)). *Bearden* thus does not pose an absolute constitutional bar to consideration of a defendant's financial status. For example, *Bearden* permits a sentencing court to consider the defendant's ability to pay restitution in deciding to impose a more lenient sentence. *See United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) ("We . . . observe that the district court's goal of obtaining restitution for the victims of Defendant's offense . . . is better served by a non-incarcerated and employed defendant."), *abrogation on other grounds recognized by United States v. Munoz-Camarena*, 621 F.3d 967, 969 (9th Cir. 2010) (per curiam). But *Bearden*'s allowance for limited consideration of the defendant's financial background does not undermine the core constitutional prohibition against imposition of a longer prison term as a substitute for a monetary penalty. This interpretation of *Bearden* is confirmed by our holding in *United States v. Parks*, 89 F.3d 570 (9th Cir.

1996), in which we read *Bearden* and its predecessors to prohibit imposition of a longer term of imprisonment solely due to poverty. *See id.* at 572 ("[The defendant] may be receiving an additional eight months on this sentence due to poverty. Such a result is surely anathema to the Constitution." (citing *Tate*, 401 U.S. at 397-98)). In sum, under *Bearden* and *Parks*, the Constitution prohibits imposition of a longer prison term based on the defendant's poverty, although it does not forbid all consideration of the defendant's financial resources.

**[4]** The Sentencing Guidelines make socio-economic status an impermissible basis for an upward or downward departure. *See United States v. Chastain*, 84 F.3d 321, 326 (9th Cir. 1996) (holding that the need to provide restitution "may not be used as a basis for departure *from* a guideline range"); U.S.S.G. § 5H1.10 ("Socio-Economic Status . . . [is] not relevant in the determination of a sentence."). After *United States v. Booker,* 543 U.S. 220 (2005), of course, the guidelines' directive is advisory only. As we explained in *Menyweather*, *Booker* gives district courts "the discretion to weigh a multitude of mitigating and aggravating factors . . . such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities." *Menyweather*, 447 F.3d at 634 (citation, internal quotation marks and italics omitted). Thus, post-*Booker*, a district court may consider the defendant's socio-economic status as part of its broad review of the defendant's background, despite the guidelines' instruction to the contrary. A court may, for example, impose a reduced sentence to further the legitimate sentencing goal of providing restitution by allowing the defendant to work. *Compare Menyweather*, 447 F.3d at 634, *with Parks*, 89 F.3d at 572 (holding, pre-*Booker*, that the Sentencing Guidelines as well as the Constitution forbid harsher sentencing based on inability to pay fines), *and Chastain*, 84 F.3d at 325 (concluding, before *Booker*, that "[a]llowing a sentencing judge to reduce a defendant's sentence to preserve a defendant's job and facilitate restitution would introduce precisely the type of socio-economic dispar-

ity into sentencing that the Guidelines were designed to elimi-nate."). Nonetheless, *Booker* left intact the constitutional principles articulated in *Bearden*, *Tate* and *Parks*. Those well settled principles dictate our conclusion that the district court erred by treating Burgum's inability to pay as an *aggravating* factor.

We also conclude that the error was plain. Again, although its reference to Burgum's financial status was brief, the dis-trict court explicitly said it considered Burgum's inability to pay to be an "aggravating factor." As we have explained, the authority forbidding such an approach is abundant and unam-biguous. *See, e.g.*, *Bearden*, 461 U.S. at 674; *Parks*, 89 F.3d at 572. Because the district court cited Burgum's inability to pay restitution as one of the aggravating factors on which its sentence calculation was based, the error affected Burgum's substantial rights.

[5] Finally, we hold that the district court's reliance on Burgum's inability to pay "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (citation and internal quotation marks omit-ted). We recognize that the district court, in its sentencing col-loquy, strongly emphasized several other aggravating factors, particularly the nature of Burgum's offense conduct and its likely effect on bank employees. But we have made clear that "class and wealth distinctions . . . have no place in criminal sentencing" under these circumstances. *United States v. Bragg*, 582 F.3d 965, 970 (9th Cir. 2009); *see also Parks*, 89 F.3d at 572 (holding that imposition of a longer term of imprisonment due to poverty is unconstitutional). By invok-ing Burgum's inability to pay as an "aggravating factor" and emphasizing that its sentencing decision was based in part on aggravating factors, the court improperly injected socio-economic status into the sentencing calculus. Because we can-not be sure the district court did not weigh this factor in the balance, its inclusion compromised the fairness and integrity of the sentencing proceeding.

**[6]** We therefore conclude that the district court's treatment of Burgum's inability to pay restitution as an aggravating factor constituted plain error.

## VI.

We hold that the district court did not improperly base its sentencing analysis on the statutory maximum, and that the sentence imposed was not substantively unreasonable. Nonetheless, because the district court's treatment of Burgum's inability to pay was plain error affecting substantial rights that compromised the fairness and integrity of the sentencing hearing, we vacate and remand for resentencing without consideration of Burgum's inability to pay.

**VACATED AND REMANDED.**

---

O'SCANNLAIN, Circuit Judge, dissenting:

Joseph Case Burgum pled guilty to two counts of bank robbery. As noted, in both robberies Burgum approached the bank manager and identified himself as an FBI agent. Burgum handcuffed both managers to a black box which Burgum claimed was a bomb. Burgum then displayed a remote control and said something to the effect of: "I've activated the bomb. This device is a remote control. If I press this button, it will blow you and half this building up."

At sentencing, the district court calculated a Guidelines range of 108-135 months, but, ultimately, departed upward to a sentence of 180 months. During a lengthy sentencing hearing, the district court noted that one aggravating factor, among many, was that Burgum was unlikely to repay the money that he stole from the banks. The majority concludes that such mention of Burgum's unlikeliness to pay restitution

mandates that we vacate Burgum's sentence and remand for resentencing.

I agree that Ninth Circuit precedent prohibits the sentencing judge from treating Burgum's financial situation as an aggravating factor. But, as the majority concedes, because Burgum did not object to the district court's considering his inability to make restitution, our review is for plain error. We may vacate and remand only if there is "plain forfeited error affecting substantial rights that seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993). For an error to affect a defendant's "substantial rights," the defendant typically must show that the error "affected the outcome of the district court proceedings." *Id.* at 734. A review of the record here demonstrates that Burgum's sentence was driven by the violent method by which he accomplished the robberies and that Burgum's inability to make restitution for his crimes did not affect his sentence. Therefore, I respectfully dissent.

After calculating the Guidelines range and noting some mitigating factors, the sentencing judge said that he "found some very troubling, aggravating factors here, too." "The problem and issue that I am struggling with in this case," the judge continued, "and what was so upsetting to me was the nature of these bank robberies that [Burgum] did. First and foremost I just find the infliction of emotional distress on the bank manager and the tellers to be incomprehensible. I can't imagine the terror that they must have fe[lt] and . . . will continue to feel." The judge indicated that Burgum's robberies were "more terrifying" than most "because of the use of the hoax bomb," calling the robberies "cold and calculated," as well as "very cruel and tormenting to the victims." "And that's what troubles me the most about this case," he added.

After noting some other aggravating factors, the judge moved to his standard discussion of factors he considers at sentencing (drawn, of course, from 18 U.S.C. § 3553(a)).

When the judge reached the need to provide restitution, section 3553(a)(7), he was reminded of another aggravating factor: "One additional aggravating factor that I didn't mention," the judge noted, is that "the chances of restitution in this case are probably slim, maybe even null," given that Burgum appeared unlikely to pay back the $258,280 he owed to the banks.

The judge revealed that he intended to depart upward to a sentence of fifteen years. He then noted that "what is . . . driving me on the sentence is the nature of this offense. This is about as bad a bank robbery as I can imagine."

The sentencing judge echoed this statement several more times throughout the lengthy proceeding:

- "[A]gain, what is upsetting to me is the nature of the offense."

- "These offenses were two very, very serious robberies with hoax bombs; letting people [believe] that, at any moment, they could be blown to smithereens . . . . I have never seen anything like that. And, I'm actually surprised that everyone was saying [that a] seven and a half year[ ]" sentence was appropriate.

- "I can get past the criminal history . . . . But I just can't get over the cruel and unusual, violent nature of the robberies, to say that a seven-and-a-half year sentence is appropriate. I just can't do that."

- A seven-and-a-half year sentence "does not reflect the seriousness of what happened here."

- "[W]hen I look at this offense, it was terrifying to me. It was absolutely terrifying. . . . I would

rather [have] a gun pointed at me than someone attaching" a bomb to my wrist. "I haven't seen . . . anything as cruel as that."

- "There is a part of me that has compassion and mercy for Mr. Burgum. . . . But the thing that is upsetting to me, even as I speak, is I'm just envisioning handcuffs, attached to my wrist and telling me . . . I could be blown up. That's just frightening. It's an act of terror. I can't get by the seriousness of the offense."

Viewed in the context of the sentencing as a whole, it is abundantly clear to me that the district judge upwardly departed because of the violent nature of the robberies, and that the judge's reference to unlikely restitution was an incidental observation that did not affect the sentence.

I respectfully dissent.