

Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**DENNIS CASTRO ALDAN,**
**aka Dennis Gatus Castro, aka Danny Christopher Castro,**
Defendant-Appellant.

Supreme Court Case No. CRA19-011
Superior Court Case No. CF0085-19

## OPINION

### Cite as: 2022 Guam 4

Appeal from the Superior Court of Guam
Determined on the briefs submitted January 27, 2020
Hagåtña, Guam

Appearing for Defendant-Appellant:
William Benjamin Pole, *Esq.*
Law Offices of Gumataotao & Pole, P.C.
456 W. O'Brien Dr., Ste. 104
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Christine Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913

**E-Received**
6/23/2022 1:45:07 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

**[1]** Defendant-Appellant Dennis Castro Aldan appeals a final judgment of conviction for (Charge 1) Second Degree Robbery (As a Second Degree Felony), two counts; (Charge 2) Second Degree Robbery (As a Second Degree felony), two counts; (Charge 3) Conspiracy to Commit Second Degree Robbery (As a Second Degree Felony), two counts; and (Charge 5) Terrorizing (As a Third Degree Felony), three counts.[1]

**[2]** We affirm in part, reverse in part, and remand to dismiss the improper convictions and for resentencing.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[3]** In February 2019, Guam Police Department responded to an armed robbery complaint at Papa John's restaurant in Mangilao. While at Papa John's, Officer Palacios met with shift manager Christopher Kaipat and two employees, Frederico Tedtaotao and Theresa McDermott. According to the workers, between 9:20 p.m. and 9:30 p.m. a male with a covered face entered Papa John's holding what looked like a gun. Tedtaotao and McDermott were cleaning the restaurant. After the individual entered the store, McDermott slowly backed up and called Kaipat. The individual then pointed the gun at McDermott and stated, "Open the 'reg.' and give me money." Transcript ("Tr.") at 60, 75 (Jury Trial, Apr. 5, 2019). Tedtaotao told Kaipat and McDermott to get down. Tedtaotao testified that he was worried that the individual would shoot him, Kaipat, and McDermott. McDermott testified that she was shocked, frozen, and scared. The male individual

---

[1] Two theft convictions were not appealed, presumably because they were dismissed by the trial court during sentencing. *See* Transcript ("Tr.") at 2-3 (Sentencing Hr'g, Aug. 30, 2019); Record on Appeal ("RA"), tab 66 at 2 (People's Sentencing Mem., Aug. 27, 2019); Notice of Appeal (Sept. 9, 2019).

then took a tip jar containing $7.00. After the individual fled the store, Tedtaotao jumped over the counter and ran outside the establishment. Tedtaotao saw the male individual enter the passenger side of a blue Nissan Sentra. Tedtaotao discerned all but the last number of the license plate. Surveillance footage from the store captured the events.

[4]     On the same evening, Guam police officers responded to a robbery complaint at Loco Mart in Dededo. At the scene, officers met with the store cashier, Christopher Reyes. Reyes testified that a male individual swung the door open, pointed a gun at Reyes, and yelled at Reyes, "Give me the money." *Id.* at 87, 89. The individual wore a women's beige cardigan, sneakers, latex gloves, and a white cloth around his face. The individual then rushed Reyes towards the cash register, telling him to move faster. Reyes testified that he was shocked and afraid the individual would shoot him. *Id.* at 90-91; *see also id.* at 81-82 (police testified that upon their arrival, Reyes was barricaded, scared, and "shook in disbelief"). Reyes filled a plastic bag, belonging to the individual, with approximately $1,600 from the cash register. After the individual left Loco Mart, Reyes called the police. Surveillance footage from the store captured the events.

[5]     Based on the partial license plate number, the detectives determined the vehicle was a blue Nissan Sentra registered to Victor DeLeon Guerrero. Days after the incidents, police spoke to DeLeon Guerrero, who implicated his uncle, Dennis Aldan, in the robbery. Police executed a search warrant at Dennis Aldan's Dededo residence. Police recovered a beige women's cardigan from Aldan's residence. Police found latex gloves in the center console of DeLeon Guerrero's blue Nissan Sentra.

[6]     Police also executed a search warrant on a white sedan registered to Donald Aldan, brother of Dennis Aldan and uncle of DeLeon Guerrero. In that vehicle, police recovered black and white

shoes matching those in the surveillance videos and a white shirt, used to cover Aldan's face during the robbery.

[7]     When confronted with the evidence, Aldan stated, "I did it." *Id.* at 142. Aldan told police that DeLeon Guerrero asked him to rob a store to pay for DeLeon Guerrero's bills. Aldan admitted he put a white t-shirt over his face and wore his mother's beige cardigan during the robbery. Aldan also stated that he used a pellet gun resembling a brown wooden rifle he found in DeLeon Guerrero's vehicle. Aldan confessed that he stole a tip jar from Papa John's and $2,000 from Loco Mart. Aldan told police that DeLeon Guerrero threw the wooden rifle-style pellet gun out the window of the vehicle, behind a school. Based on Aldan's description of the location, police recovered the gun.

[8]     At trial, DeLeon Guerrero testified that on the morning of the crimes, he asked Aldan if he was interested in making "fast cash." Tr. at 49 (Jury Trial, Apr. 8, 2019). Aldan and DeLeon Guerrero created a plan to rob Papa John's at closing using the pellet gun because it resembled a deadly weapon. According to DeLeon Guerrero, the idea was that the employees would be afraid of getting shot and hand over money if they saw the gun. After they discovered only $7.00 in the Papa John's tip jar, Aldan and DeLeon Guerrero decided to rob Loco Mart in Dededo as they were driving by the establishment.

[9]     A grand jury indicted Aldan on two different charges of Second Degree Robbery—both with two counts—plus two counts of Conspiracy to Commit Second Degree Robbery, one count of Theft as a second degree felony, three counts of Terrorizing, and one count of Theft as a misdemeanor. All charges except the misdemeanor Theft included accompanying special allegations of a deadly weapon.

[10]     Regarding the Second Degree Robbery charges, Charge One indicted Aldan for committing thefts in violation of 9 GCA § 40.20(a)(2) for putting a person in fear of immediate serious bodily injury—one count for robbing Papa John's employee Theresa McDermott and the second count for robbing Loco Mart employee Christopher Reyes.  Charge Two indicted Aldan for thieving property in violation of 9 GCA § 40.20(a)(3) while armed with what appeared to be a deadly weapon—one count for robbing Papa John's and the second count for robbing Loco Mart.

[11]     After the People closed their case-in-chief, each special allegation was dismissed.  The People filed a Second Amended Indictment reflecting the dismissals.  The jury returned a guilty verdict against Aldan on all remaining charges.  Aside from a general "motion to acquit" on all charges, the record lacks any objection to the robbery indictments, or any good cause basis for not objecting.

[12]     At sentencing, the People dismissed the two theft charges, under *People v. Afaisen*, 2016 Guam 31, to avoid double jeopardy with the robbery charges.  The People also argued that Charges One through Three (i.e., the two robbery charges and conspiracy charges) merged under the "unit of prosecution" test for each location—meaning Charge One, Count One merges with Charge Two, Count One for the robbery at Papa John's and with the Charge Three Conspiracy for that robbery.  Record on Appeal ("RA"), tab 66 at 2 (People's Sentencing Mem., Aug. 27, 2019) (citing *People v. San Nicolas*, 2001 Guam 4 ¶ 11).  The People categorized this as a single transaction at Papa John's but made clear the Loco Mart counts had a separate victim and thus would not merge with Counts One.  Instead, Charge One, Count Two and Charge Two, Count Two along with the related Charge Three Conspiracy would merge as a single transaction at Loco Mart.

[13]     Aldan was sentenced to ten years' incarceration for each of the two robberies, to run consecutively, for a total of twenty years.  Aldan also received a concurrent ten-year sentence for

each of the conspiracy convictions, and a concurrent five-year sentence for each of the terrorizing convictions. Essentially, Aldan was sentenced to ten years' imprisonment for the Papa John's robbery, including all charges specific to that location, and ten additional years for the Loco Mart robbery by the same formula.

**[14]** Aldan timely appealed.

## II. JURISDICTION

**[15]** This court has jurisdiction over an appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-145 (2022)); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

**[16]** The "failure to raise objections to defects in the indictment or institution of the prosecution in a timely fashion, without good cause, precludes appellate review." *People v. Taisacan*, 2018 Guam 23 ¶ 11 (quoting *People v. White*, 2005 Guam 20 ¶ 16). When no objection to jury instructions was made at trial, we review the instructions for plain error. *People v. Felder*, 2012 Guam 8 ¶ 8. We consider *de novo* whether the instructions accurately stated the law. *See People v. Diego*, 2013 Guam 15 ¶ 9.

**[17]** We review claims of double jeopardy *de novo* as they are questions of law. *Afaisen*, 2016 Guam 31 ¶ 9.

**[18]** "Where a defendant raises the issue of sufficiency of the evidence by a motion for judgment of acquittal, we review the trial court's denial of the motion *de novo*." *People v. George*, 2012 Guam 22 ¶ 47. When reviewing for sufficiency of the evidence, "the reviewing court must determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Quenga*, 2015 Guam 39 ¶ 9 (quoting *People v. Mendiola*, 2014 Guam 17 ¶¶ 14-15).

[19]     We review the trial court's imposition of a sentence for abuse of discretion.  *People v. Diaz*, 2007 Guam 3 ¶ 10.  When a procedural sentencing error is raised for the first time on appeal, we review for plain error.  *United States v. Burgum*, 633 F.3d 810, 812 (9th Cir. 2011).

## IV.  ANALYSIS

### A.  Aldan's Robbery Convictions Are Multiplicitous, and We Dismiss the Convictions Under 9 GCA § 40.20(a)(3) in Our Discretion

[20]     On appeal, Aldan argues *inter alia* Charges One and Two are multiplicitous,[2] a predicament that may violate several legal standards including that it contravenes the legislature's intent and improperly punishes the defendant twice for one crime.  Appellant's Br. at 23-25 (Nov. 29, 2019); *see also Rutledge v. United States*, 517 U.S. 292, 297 (1996); *People v. Martin*, 2018 Guam 7 ¶ 14.  The People agree, "[b]ecause both sets of robbery charges were based on the same conduct," but they argue Aldan waived appellate review or, alternatively, that one set should be only vacated and not dismissed.  Appellee's Br. at 1, 16-18 (Jan. 16, 2020).  Because the robbery charges formed a "continuing course of conduct" at each business, convictions for both charges violate double jeopardy and offend 9 GCA § 1.22(e); in our discretion, we choose to vacate Charge Two.

[21]     The record lacks any objection to the robbery indictments, or any good cause basis for not objecting.  *See* Tr. at 117, 120 (Apr. 8, 2019); 8 GCA §§ 65.15, 65.45 (2005) (establishing waiver where defendant fails to object to indictments); *People v. Yerten*, 2021 Guam 8 ¶ 9 (requiring good cause to overcome waiver); *Taisacan*, 2018 Guam 23 ¶ 11 (explaining that failure to timely object precludes appellate review); *White*, 2005 Guam 20 ¶ 16 (confirming Guam follows federal practice of strict compliance with objection timeliness).  Aldan waived his opportunity to object to the twofold indictments, but he is not precluded from multiplicity relief under 9 GCA § 1.22(e):

---

[2] Aldan does not use the phrase "double jeopardy" in his opening brief, but the People nonetheless "analyze his double jeopardy claim," as do we.  *See* Appellant's Br. at 23-25 (Nov. 29, 2019); Appellee's Br. at 17 (Jan. 16, 2020); *see also* Appellant's Reply Br. at 1 (citing *United States v. Zalapa*, 509 F.3d 1060 (9th Cir 2007)).

> When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> . . . ;
>
> (e) the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

9 GCA § 1.22(e) (2005).

[22]     Title 9 GCA § 1.22 addresses certain double jeopardy concerns, an issue reviewed *de novo*. *People v. Pablo*, 2016 Guam 29 ¶ 20. Moreover, the language of 9 GCA § 1.22 indicates it is to be used after trial, when multiple convictions may be problematic; the statute's comment notes it "cannot be used as a basis to strike counts of indictments or information before trial and conviction." 9 GCA § 1.22, cmt.; *see also United States v. Zalapa*, 509 F.3d 1060, 1061 (9th Cir. 2007) ("We hold that a defendant who fails to object in the district court to multiplicitous convictions and sentences does not waive his or her right to raise a double jeopardy challenge on appeal.").

[23]     Aldan applies *Afaisen*, 2016 Guam 31 ¶¶ 13, 31-35, in conjunction with 9 GCA § 1.22(e) to argue his convictions violate double jeopardy, both because the lenity rule disfavors multiple convictions under the same statute and because at each business the robbery was a continuous course of conduct—a single transaction. Appellant's Br. at 23-25; *see also Afaisen*, 2016 Guam 31 ¶¶ 12-13 (discussing interplay between Double Jeopardy Clause and "'unit of prosecution' test").[3] In other words, the robbery of Papa John's with an apparent gun was the same incident as the threat to inflict serious bodily injury on McDermott with that supposed gun—it was

---

[3] *Afaisen* upheld separate Attempted Murder convictions based on factors distinguishable from this case: separate victims and reliance on the unambiguous homicide (as opposed to inchoate) statute. 2016 Guam 31 ¶¶ 21-25. However, Robbery and Theft were considered a continuous course of conduct. *Id.* ¶ 51.

uninterrupted. *See Afaisen*, 2016 Guam 31 ¶ 13 ("[U]nder the rule of lenity, the disposition would reverse multiple convictions under a single statute when the defendant's conduct manifests from a single transaction."). The same applies to Reyes at Loco Mart. The People agree and no longer seek merger. *See* Appellee's Br. at 17-18 ("Therefore, the People acknowledge that only one set of robbery charges, either Charge One in its entirety or Charge Two in its entirety, can stand.").

[24] Likewise, we concur with Aldan's reasoning. Under the facts of this case, 9 GCA § 1.22(e) prohibits convictions for the same robbery under both 9 GCA § 40.20(a)(2) and 9 GCA § 40.20(a)(3) at each location. Robbing a store with an object meant to look like a gun was part and parcel to robbing the same store while threatening to inflict serious bodily injury on an individual with that same object; they formed an uninterrupted, continuing course of conduct. Further, under *Afaisen*, Aldan's gun-brandishing was a single transaction at each store, but the trial court convicted him under two subsections of 9 GCA § 40.20(a) for the same act. For both reasons, the two robbery convictions may not stand, and either Charge One or Charge Two cannot remain.

[25] The People suggest a hypothetical trial court situation to argue multiplicitous convictions should be vacated, rather than dismissed. Appellee's Br. at 19. However, those facts are not before us, and 9 GCA § 1.22 specifies neither. Accordingly, we follow our jurisprudence and dismiss one Charge. *See Afaisen*, 2016 Guam 31 ¶¶ 52-54 ("[T]he proper disposition, under the circumstances of this case, is not merger of sentences but dismissal . . . .").

[26] We must dismiss either: both counts of Charge One—9 GCA § 40.20(a)(2) for intentionally putting "McDermott in fear of immediate serious bodily injury" and intentionally putting "Reyes in fear of immediate serious bodily injury"; or both counts of Charge Two—9 GCA § 40.20(a)(3) for "intentionally, knowingly or recklessly armed with or display[ing] what appeared to be a deadly weapon, while in the course of committing theft of property belonging to Papa Johns . . . [and]

Loco Mart." RA, tab 41 at 2-3 (Second Am. Indictment, Apr. 9, 2019). For convictions of equal weight, we have discretion to choose which will remain. *People v. Santos*, 2020 Guam 5 ¶ 26.

[27]    We choose to dismiss the 9 GCA § 40.20(a)(3) convictions because the indictments named businesses, rather than persons, as victims. Robbery is a crime against a person. *See* Comment to 9 GCA § 40.10 cross-referencing 9 GCA § 40.20 ("[T]he traditional kind of robbery includes the taking from the 'person or immediate presence' . . . ."); *see also*, *e.g.*, *Craig v. State*, 893 So. 2d 1250 (Ala. Crim. App. 2004) ("'Robbery is an offense against the person . . .' That is, the victim in this case was Gallahar, not the dry-cleaning business, although some of the property taken belonged to the business." (quoting *Ex parte Windsor*, 683 So. 2d 1042, 1046 (Ala. 1996))); *State v. Ingram*, 687 A.2d 1279, 1290 (Conn. App. Ct. 1996) ("[R]obbery is a person and victim oriented crime . . . . [I]ts basic thrust is to protect the integrity of the individual."); *Riggens v. State*, 207 So. 2d 141, 142-43 (Ala. Ct. App. 1968) (affirming robbery conviction that named gas station attendant as victim when stolen money belonged to business (citing *United States v. Mann*, 119 F. Supp. 406, 407 (D.D.C 1954))).

**B.  Terrorizing Is an Included Offense of Second Degree Robbery Under 9 GCA § 40.20(a)(2)**

[28]    Aldan argues his Terrorizing convictions violate double jeopardy because they are included offenses of robbery—that under 9 GCA § 40.20(a)(2) and 9 GCA § 40.20(a)(3), terrorizing is subsumed. Because we are dismissing the robbery convictions brought under section 40.20(a)(3), we need only analyze if terrorizing is subsumed under the section 40.20(a)(2) charge. We agree with Aldan and hold 9 GCA § 40.20(a)(2) includes terrorizing.

[29]    Guam law prohibits *convicting* a defendant for double jeopardy crimes; merely merging improperly multiplicitous sentences will not suffice. *See* 9 GCA § 1.22; *Afaisen*, 2016 Guam 31 ¶ 52. Even so, other jurisdictions use the term "merge" more ambiguously when evaluating double

jeopardy. *See, e.g.*, *Jackson v. Beyer*, 750 F. Supp. 153, 159 (D.N.J. 1990). Whether one offense "merges with another for purposes of punishment is a question of statutory interpretation." *United States v. Cedar*, 437 F.2d 1033, 1036 (9th Cir. 1971) (per curiam) (citing *Prince v. United States*, 352 U.S. 322, 323-25 (1957)). We begin our analysis by comparing the robbery and terrorizing statutes and determining whether one offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." 8 GCA § 105.58(b)(1) (2005).

[30] A defendant may be prosecuted for conduct that constitutes more than one offense, but he may not be convicted of more than one offense if one offense is included in another. *See* 9 GCA § 1.22(a); 8 GCA § 105.58. A lesser included offense occurs when one offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." 8 GCA § 105.58(b)(1); *see also Cedar*, 437 F.2d at 1036 ("[O]ffenses merge only when proof of the elements of one necessarily establishes all of the elements of the lesser or included offense . . . .").

[31] Our terrorizing statute, 9 GCA § 19.60, states:

> (a) A person is guilty of terrorizing if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable consequence of such a threat, is to place the person to whom the threat is communicated or the person threatened in reasonable fear that crime will be committed.

9 GCA § 19.60(a) (2005). Our Second Degree Robbery statute, 9 GCA § 40.20(a)(2), states:

> (a) A person is guilty of *robbery in the second degree* if, in the course of committing a theft, he:
>
> . . . ;
>
> > (2) threatens another with or intentionally puts him in fear of immediate serious bodily injury . . . .

9 GCA § 40.20(a)(2) (2005).

[32]    Regarding the threatened consequence referenced in Second Degree Robbery, we hold "serious bodily injury" means "bodily injury which creates: serious permanent disfigurement; a substantial risk of death or serious, permanent disfigurement; severe or intense physical pain; or protracted loss or impairment of consciousness or of the function of any bodily member or organ." 9 GCA § 16.10 (2005); *People v. Ramey*, 2019 Guam 11 ¶ 20 (using 9 GCA § 16.10 to define "serious bodily injury" in the Second Degree Robbery statute). The threatened consequence referenced in Terrorizing to cause "a crime of violence dangerous to human life" comports with this Second Degree Robbery definition. *See* 9 GCA § 19.60(a). While the language of the statutes differs slightly, the meaning is the same: both statutes are violated when one threatens another with or intentionally puts one in fear of immediate violence dangerous to human life.

[33]    Regarding the victim's experience of the crime, Terrorizing explicitly requires that "the natural and probable consequence of such a threat[] is to place the [victim] in reasonable fear," 9 GCA § 19.60(a), while Second Degree Robbery requires the defendant to "threaten[]" or put the victim "in fear," 9 GCA § 40.20(a)(2). We need not hair-split these meanings because we held in *People v. Camacho* that for Terrorizing, the threatened victim "need not be placed in actual fear" if apprehension of the threatened injury is probable. 2015 Guam 37 ¶¶ 25-27. In plain meaning, a victim who is threatened or in fear of immediate serious bodily injury, under Second Degree Robbery, would naturally and probably fear that a violent crime will be committed under Terrorizing.

[34]    The 9 GCA § 40.20(a)(2) indictment charges Aldan with placing "McDermott in fear of immediate serious bodily injury" and intentionally putting "Reyes in fear of immediate serious bodily injury." RA, tab 41 at 1-2 (Second Am. Indictment). McDermott testified she backed up

and was shocked, frozen, and scared while Aldan pointed a gun at her and demanded money. Reyes testified he was shocked and afraid Aldan would shoot him while Aldan pointed a gun at him, rushed him, and yelled for him to get the money. In both scenarios, it is probable that McDermott and Reyes reasonably feared Aldan would commit a crime of violence dangerous to human life under 9 GCA § 19.60(a).

[35]    In looking to other jurisdictions for guidance, we note "the Guam Legislature used the term 'terrorizing,' in drafting 9 GCA section 19.60(a) and (b), [while] other jurisdictions use the term 'terroristic threat' in statutes that seek to prohibit the same conduct." *Camacho*, 2015 Guam 37 ¶ 25 (quoting *People v. Root*, 1999 Guam 25 ¶ 7).

[36]    New Jersey and Pennsylvania hold that convictions merge when evidence establishing a terrorizing conviction is the same or less than the evidence used to establish the second degree robbery conviction. New Jersey courts, when assessing N.J.S.A. § 2C:15-1(a)(2), a statute that mirrors ours, held terroristic threat and robbery merge when the threat was incidental to the robbery. *State v. Pyron*, 495 A.2d 467, 468 (N.J. Super. Ct. App. Div. 1985); *see also State v. Van Valen*, 719 A.2d 661, 662 (N.J. Super. Ct. App. Div. 1998) (per curiam). The Pennsylvania Superior Court in *Commonwealth v. Walls* held the convictions must merge when all the facts used to support the robbery charge were the same as those used to support the terroristic threat charge. 449 A.2d 690, 694-96 (Pa. Super. Ct. 1982) (holding threatening victim with a gun in the course of theft was basis of robbery and terroristic threat convictions, and thus must merge); *c.f. Barnett v. State*, 420 S.E.2d 96, 97 (Ga. Ct. App. 1992) (holding robbery conviction and terroristic threat conviction do not merge when threat made after completion of robbery).

[37]    We hold Terrorizing, as charged here, is included within the 9 GCA § 40.20(a)(2) offenses because the facts to prove the Terrorizing charge are "established by proof of the same or less than

all the facts required to establish the commission of the offense charged." *See* 8 GCA § 105.58(b)(1).

**[38]** Aldan also argues that his Terrorizing charges stem from a single criminal incident and should merge. As we are including the Terrorizing charges with 9 GCA § 40.20(a)(2), we need not analyze this argument.

## C. The Mens Rea Instruction for Robbery Is Not Plainly Erroneous

**[39]** Aldan argues that the mens rea element for his robbery convictions was incorrect in both the indictment and the jury instructions. Appellant's Br. at 12. The People concede the mens rea element was incorrect but argue Aldan's failure to object to the indictment's defects before trial means the issue is waived. Appellee's Br. at 11-12. The People argue that if we do review the issue, the error was not plain and does not warrant reversal. *Id.* We agree with the People. Aldan waived the issue by failing to timely object to the indictment and jury instructions. And even were we to exercise our discretion to review the issue, we would find no plain error.

**[40]** In *Taisacan*, this court reaffirmed the rule that the "failure to raise objections to defects in the indictment . . . , without good cause, precludes appellate review." 2018 Guam 23 ¶ 11 (quoting *White*, 2005 Guam 20 ¶ 16); *see also* 8 GCA § 65.45. This rule is derived from 8 GCA § 65.15(b), which states, in relevant part:

> The following shall be raised prior to trial:
>
> . . .
>
> (b) Defenses and objections based on defects in the indictment, information or complaint (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings) . . . .

8 GCA § 65.15(b).

**[41]** Additionally, 8 GCA § 65.45 provides:

> Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to § 65.15, or prior to any extension thereof made by the court, shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver.

8 GCA § 65.45.

[42] According to the statutory language of 8 GCA § 65.45, we will grant relief from waiver only upon a showing of good cause. Aldan does not allege that "good cause" existed for his failure to object. Thus, to the extent he is appealing a defect in the indictment, we hold that it is waived, and we cannot review the issue.

[43] Even if we granted relief from the waiver and reviewed for plain error, we would affirm. When a party fails to object to jury instructions, we review for plain error. *Felder*, 2012 Guam 8 ¶ 19; *People v. Jones*, 2006 Guam 13 ¶ 8. Under plain error review, Aldan must not only establish that an error occurred; he must show that the error was clear or obvious under current law, the error affected his substantial rights, and that reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process. *See Felder*, 2012 Guam 8 ¶ 19.

[44] Title 9 GCA § 40.20 provides: "(a) A person is guilty of *robbery in the second degree* if, in the course of committing a theft, he: . . . (2) threatens another with or intentionally puts him in fear of immediate serious bodily injury . . . ." 9 GCA § 40.20(a)(2).

[45] Aldan argues the indictment and jury instructions contain mens rea language different than that required by section 40.20(a)(2). Appellant's Br. at 19-22. Specifically, Aldan argues that the jury was instructed that for each charge, Aldan needed to have acted intentionally, knowingly, or recklessly, but section 40.20(a)(2) required that he acted "intentionally." *Id.* at 20-21. The People respond that while the Model Penal Code's commentary suggests that the mens rea for the act of threatening another is "purposeful," any error in the indictment or jury instructions is not clear or

obvious under current law because the language tracks the robbery statute and the mens rea "catch-all" provision of 9 GCA § 4.40. Appellee's Br. at 9-12.

[46]     We first note an error in Aldan's reading of the indictment and jury instructions. Aldan argues that the indictment and jury instructions required the mens rea of "intentionally, knowingly, or recklessly" for both prongs of Second Degree Robbery under 9 GCA § 40.20(a)(2).[4] However, the indictment charged Aldan with either (1) "intentionally, knowingly or recklessly threaten[ing]" the victims or (2) "intentionally put[ting] [the victims] in fear of immediate serious bodily injury." RA, tab 41 at 2-3 (Second Am. Indictment). Thus, the indictment assigned the mens rea of "intentionally, knowingly or recklessly" only to the "threatens another" prong, while "intentionally" was assigned to the "puts him in fear" prong. The jury instructions did the same. RA, tab 45 at Instr. Nos. 7A, 7C (Jury Instrs., Apr. 9, 2019).

[47]     We next address Aldan's contention that the language of section 40.20(a)(2) requires proof he acted "intentionally" as to both the "threatens another" and the "puts him in fear" prongs. Looking strictly at the language of the statute, Aldan's reading ignores the placement of the word "intentionally." Under the statute, a person is guilty of Second Degree Robbery if he "threatens another with or *intentionally* puts him in fear of immediate serious bodily injury." 9 GCA § 40.20(a)(2) (emphasis added). Under a plain reading, the term "intentionally" attaches to the act of putting the victim in fear of immediate serious bodily injury. The act of *threatening* another with immediate serious bodily injury does not have a mens rea expressly attached to it. Aldan makes no clear argument as to why "intentionally" applies to the act of threatening another; the basis of Aldan's argument is simply that because section 40.20(a)(2) expresses only the mens rea of "intentionally," that mental state applies to both the "threatens another" and "puts him in fear"

---

[4] For purposes of this opinion, we will refer to each as the "threatens another" prong and the "puts him in fear" prong. *See* 9 GCA § 40.20(a)(2).

prongs. We do not subscribe to such a broad reading. Rather, we resolve any ambiguity by looking to other relevant statutory provisions and legislative intent. *See People v. Enriquez*, 2014 Guam 11 ¶ 29 ("In determining the proper resolution to [a] conflict in statutory interpretation, the court first reviews the plain meaning of the statutes in connection with each other, but if the ambiguity remains after such review, we must then examine the legislature's intent when passing the law, and/or review case law for past precedent.").

[48]     As the People point out, Guam law provides a mechanism for determining the required mental state where a statute is silent. Title 9 GCA § 4.40—which we have referred to as the "catch-all" provision[5]—states that "if the definition of a crime does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established only if a person acts intentionally, knowingly or recklessly." 9 GCA 4.40 (2005). Thus, reading both sections 40.20(a)(2) and 4.40 together, it would appear that the People properly charged and the court properly instructed that the "threatens another" prong requires a culpable mental state of "intentionally, knowingly or recklessly."

[49]     However, the People admit that despite the catch-all provision of 9 GCA § 4.40, the mens rea for the "threatens another" prong remains ambiguous when viewed in light of the meaning of the word "threatens" as described in the commentary to the Model Penal Code. Appellee's Br. at 10-11. Title 9 GCA § 40.20(a)(2) is derived from the Model Penal Code ("MPC"), *see* 9 GCA §§ 40.10, 40.20 (2005), SOURCE, and tracks its language nearly verbatim, except the MPC uses the mens rea of "purposely" instead of "intentionally" for the "puts him in fear" prong. *See Guam Greyhound, Inc. v. Brizill*, 2008 Guam 13 ¶ 36 ("When the Legislature derives a statute from a model act, the commentary to that act may be used to help determine the meaning of our version.");

---

[5] *See People v. Tfong*, 2021 Guam 13 ¶ 19. Alternatively, the People refer to 9 GCA § 4.40 as the "gap-filler" provision. Appellee's Br. at 9.

*People v. Quintanilla*, 2019 Guam 25 ¶¶ 12-14 (treating MPC comments as persuasive authority).

*Compare* 9 GCA § 40.20(a)(2), *with* Model Penal Code § 222.1(1)(b). According to the People,

the MPC's commentary suggests that the mens rea for "threatens" is "purposeful," and that

"purposeful" bears the same meaning as "intentional." Appellee's Br. at 10-11. Indeed, the MPC's

commentary provides:

> The term "threaten" implies purposeful behavior. It covers explicit verbal threats
> that are designed to put the victim in fear that serious bodily injury will immediately
> result if the property is not relinquished. . . . Similarly, the language "purposely
> puts him in fear of immediate serious bodily injury" is designed to focus upon the
> actor's purposeful conduct in conveying, albeit implicitly, that harm will result if
> resistance is encountered.

Model Penal Code and Commentaries § 221.1 cmt. 4(c) (Am. L. Inst. 1980). Thus, according to

the MPC's commentary, the word "threatens" implies purposeful behavior, which is the same mens

rea required by the "puts him in fear" prong.

[50]    However, Pennsylvania, another jurisdiction that adopted the MPC's definition of robbery,

interprets the "threatens another" prong of their version of 9 GCA § 40.20(a)(2) to require a mens

rea of either "intentionally" or "knowingly," but not "recklessly"—Pennsylvania's catch-all

provision notwithstanding. In *United States v. Riley*, the court rejected the argument that applying

Pennsylvania's catch-all provision, the least culpable mental state applicable to the "threatens

another" prong of their robbery statute is recklessness. *United States v. Riley*, --- F. Supp. 3d ----,

2021 WL 5711305, at *9 (E.D. Pa. Dec. 2, 2021). Instead, the court looked to the ordinary meaning

of the word "threatens" and concluded:

> [A] threat requires that the assailant outwardly exhibit an *intent* to harm another,
> which in turn, implies that a person must act with purpose or knowledge when they
> make a threat. Purpose and knowledge are the most culpable states of mind. A
> person acts purposefully when he "consciously desires" a particular result; he acts
> knowingly when he is aware that a result is practically certain to follow from his
> conduct. It is difficult to imagine how a person would outwardly show that he
> means to inflict harm on another without being "practically certain" that his conduct

would constitute a threat. Cases interpreting the degree of culpability required by [Pa.C.S.A. §] 3701(a)(1)(ii) are in accord and indicate that the provision requires a mind guilty of more than just recklessness.

*Id.* (internal citation omitted).

[51]     Finally, we recently recognized (but did not decide) that the catch-all provision could apply to Guam's terrorizing statute, 9 GCA § 19.60, which prohibits communicating a threat to commit or to cause to be committed a crime of violence dangerous to human life. In *People v. Tfong*, the defendant argued that section 19.60 was unconstitutionally vague because it lacked a mens rea requirement. 2021 Guam 13 ¶ 19. We rejected defendant's argument and suggested that Guam's terrorizing statute indicates the legislature's intent to dispense with a mens rea requirement, but if not, the catch-all provision would apply, thus resolving any issues of unconstitutional vagueness. *Id.* ¶¶ 19-21.

[52]     In sum, the mens rea for the "threatens another" prong of 9 GCA § 40.20(a)(2) is subject to multiple valid interpretations. We need not decide on any of these interpretations here. Even if the indictment and jury instructions charged an improper mens rea for the "threatens another" prong, such error was not clear or obvious under current law, as demonstrated by the varying constructions discussed above, including: (1) the MPC commentaries suggesting the proper mens rea for the "threatens another" prong is "purposeful," (2) Pennsylvania's interpretation of its version of the "threatens another" prong as requiring the culpable mental states of either "intentionally" or "knowingly," and (3) our recent discussion in *Tfong* of the meaning of communicating a threat under our terrorizing statute and our suggestion that the catch-all provision could apply to such conduct. And the clearness or obviousness of any error is further muddied by the language of the indictment and jury instructions tracking that of 9 GCA § 40.20(a)(2) and the catch-all provision of 9 GCA § 4.40. We have generally approved of indictments and instructions

that track statutory language. *See, e.g.*, *Jones*, 2006 Guam 13 ¶ 37 ("Generally, an indictment which tracks the language of the statute will be sufficient."); *People v. Aldan*, 2018 Guam 19 ¶ 14 (citing cases but noting exceptions to general rule).

[53] Moreover, under the substantial rights prong of the plain error test, Aldan must show how the alleged error "affected the outcome of the case." *See People v. White*, 2020 Guam 6 ¶ 23 (quoting *Felder*, 2012 Guam 8 ¶ 22). There must be a likelihood the jurors relied on the "recklessly" mens rea rather than the "intentionally."

[54] Aldan's co-perpetrator DeLeon Guerrero testified that Aldan acted intentionally, as he purposefully used the pellet gun intending to place the store employees in fear of immediate serious bodily injury. *See* Tr. at 61 (Jury Trial, Apr. 8, 2019). And during closing, the prosecutor argued the evidence showed Aldan acted intentionally, rather than knowingly or recklessly:

> The statute says that it's, "he did intentionally, knowingly or recklessly" that it -- this is his mental state, intentionally, and my contention is the evidence proves intentional. "Intentionally threaten Theresa Jo McDermott with fear of immediate serious bodily injury."

Tr. at 82 (Jury Trial, Apr. 9, 2019). Thus, the record sufficiently demonstrates that the jurors based their verdict on an understanding that Aldan acted intentionally.

[55] As we find that the alleged error in the indictment and jury instructions was neither (1) clear or obvious under current law, nor (2) one that affected Aldan's substantial rights, we hold the indictment and jury instructions for Second Degree Robbery under 9 GCA § 40.20(a)(2) did not amount to plain error.

## D.  Sufficient Evidence Exists to Support Aldan's Two Convictions for Conspiracy

[56] Arguing that Guam law favors a single conspiracy conviction even when there is evidence of multiple criminal objectives, Aldan challenges the sufficiency of the evidence to support two conspiracy convictions. Appellant's Br. at 30.

[57]    Under our statute, 9 GCA § 13.35, "[i]f a person conspires to commit a number of crimes, he may be convicted of only one conspiracy so long as those multiple crimes are the object of the same agreement or continuous conspiratorial relationship."  But if there are multiple agreements and a marked end to a conspiratorial relationship, then one may be guilty of multiple conspiracy convictions.  While our jurisprudence has yet to define an exact test for what constitutes multiple agreements and a marked end to a conspiratorial relationship, we recognize this is a fact-intensive inquiry.  *See United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) ("Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals.").

[58]    In *People v. Quenga*, we adopted a multi-factor test to aid this fact-intensive inquiry:

> The number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and the degree to which interdependence is needed for the overall operation to succeed.

2015 Guam 39 ¶ 75 (quoting *Commonwealth v. Andrews*, 768 A.2d 309, 316 (Pa. 2001)).

[59]    There was direct testimony about the scope of the agreement.  *See* Tr. at 48-63 (Jury Trial, Apr. 8, 2019).  The evidence supports a finding of two agreements.  Aldan's co-conspirator, DeLeon Guerrero, testified that he and Aldan agreed to commit the initial Papa John's robbery on the morning of the robbery.  The two agreed to rob Papa John's at closing using a realistic looking pellet gun.  DeLeon Guerrero testified that after the first robbery, which was the agreement established by the initial conspiracy, the two planned to rob Loco Mart.  This second agreement occurred after completing the first criminal acts, in a second location, with the intent to commit a similar crime but with different victims.  The two agreements had no interdependence, as either conspiracy could have been discussed, agreed to, and acted on without the other.

[60]     As Aldan and DeLeon Guerrero made two independent agreements to commit robbery, at separate times, in separate locations, and with the intent to harm separate victims, there is sufficient evidence for a jury to find Aldan committed two conspiratorial acts. The evidence established Aldan and DeLeon Guerrero had no intention or thought of robbing Loco Mart during the initial conspiracy. There was a marked end to a conspiratorial agreement upon completing the robbery at the Papa John's.

[61]     We affirm that sufficient evidence exists to support the separate conspiracy convictions.

### E. Aldan's Right to a Fair Trial Was Not Violated by the Special Allegations of Use of a Deadly Weapon

[62]     Aldan contends that his right to a fair trial was violated because the special allegation of use of a deadly weapon was attached to each count of the indictment and would lead the jury to convict based on the sheer number of charges. Aldan asserts that he "was prejudiced by charging out so many crimes for a single act." Appellant's Br. at 32.

[63]     Aldan's challenge here fails for two reasons. First, Aldan's failure to object before trial to any alleged defect in the indictment means that the objection is waived. *See Taisacan*, 2018 Guam 23 ¶ 11 (reiterating that without good cause, failure to timely object to indictment defect precludes appellate review). Second, even if the argument is not waived, Aldan's challenge is moot and non-prejudicial.

[64]     The People dismissed the special allegations after their case-in-chief; therefore, the special allegations were never sent to the jury. Although Aldan references a potential "latent feeling of hostility engendered by the charging of several crimes as distinct from only one," he provides no support that this occurred and cites an inapplicable case. *See* Appellant's Br. at 33 (quoting *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964)). The record indicates one potential juror admitted "just hearing all the charges" may prejudice her based on her personal experience, but she was

dismissed for cause. Tr. at 32-33, 52 (Jury Selection, Apr. 4, 2019). The record otherwise indicates that the court, the defense attorney, and the prosecutor repeatedly reminded the jury that indictments do not prove guilt. Before deliberation, the jury was informed all special allegations of a deadly weapon were dismissed and was instructed on only the remaining allegations. The court further explained that each charge and each count must be independently proven beyond a reasonable doubt.

[65]     As the special allegations were never sent to the jury, and Aldan has presented no applicable case law or factual findings to evidence their prejudicial effect, we find Aldan's right to a fair trial was not violated.

**F.  The Superior Court Did Not Consider Aldan's Poverty in Sentencing, but It Considered His Ability to Pay as Required by Statute**

[66]     Aldan argues that the Superior Court erred in considering his financial resources during sentencing, thus violating his due process rights. Appellant's Br. at 34. The People respond that, while the court did mention Aldan's lack of financial resource, this was related to his ability to pay restitution, not as a sentencing factor. Appellee's Br. at 33-34.

[67]     "[T]he Constitution prohibits imposition of a longer prison term based on the defendant's poverty, although it does not forbid all consideration of the defendant's financial resources." *Burgum*, 633 F.3d at 815. "[W]hen determining initially whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources." *Bearden v. Georgia*, 461 U.S. 660, 669-70 (1983). There are limits to considering the defendant's financial status. A court can neither consider a defendant's poverty as an aggravating factor, *see Burgum*, 633 F.3d at 814-16, nor condition a lighter prison term on the payment of restitution, *see Noel v. State*, 191 So. 3d 370, 379-80 (Fla. 2016) (per curiam).

[68]     Our law directs the trial court to consider whether the offender's criminal conduct caused "serious harm" and whether the offender "has compensated or will compensate the victim" when determining whether to suspend a sentence or place an offender on probation.  9 GCA § 80.60 (c)(1), (4) (2005).  While the trial court may not impose a longer prison sentence because of a defendant's poverty, the court may consider a defendant's financial status as it relates to the compensation a victim may receive.

[69]     During the sentencing hearing, the trial court listed several factors that affected its sentencing decision: "whether there's an undue risk during the period of suspended sentence or probation defendant would commit [another] crime," the need for correctional treatment, the seriousness of the crime, the harmed caused both financially and emotionally, defendant's criminal history of the last 25 years and probations for pretrial release, the involvement of co-conspirators, the goal of the offense, the use of a weapon, violence, and use of drugs.  Tr. at 15-17 (Sentencing Hr'g, Aug. 30, 2019).  The court then considered any mitigating factors but found that none applied.  After these factors, the court discussed the impact on the victims and said, "[B]ecause of Mr. Aldan's lack of financial resources, the financial impact of these crimes may never be recovered . . . ."  *Id.* at 17.

[70]     It appears the court acted as directed per 9 GCA § 80.60(c)(4), which directs the court to consider, as it did, the compensation victims have or will receive for a crime.  The court delineated in its reasoning which factors were aggravating, mitigating, and merely additional.  As the subject of financial resources was discussed only as another consideration and did not appear to be considered beyond the extent permitted by 9 GCA § 80.60(c)(4), we do not find the trial court abused its discretion when sentencing Aldan.

**[71]**     Aldan's due process rights were not violated by the consideration of his financial resources during sentencing.

## V. CONCLUSION

**[72]**     We **REVERSE** the judgment of the trial court for the 9 GCA § 40.20(a)(3) Robbery convictions and Terrorizing convictions. We **REMAND** to dismiss the improper convictions and resentence. In all other respects, the judgment is **AFFIRMED**.


/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
F. PHILIP CARBULLIDO
Chief Justice